UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA ex rel.
MICHELLE CALDERON,

Plaintiff,

v.

CARRINGTON MORTGAGE SERVICES, LLC,

Defendant.

Case No.  1:16-cv-00920-RLY-MJD

**CARRINGTON MORTGAGE SERVICES, LLC'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT
<u>FOR FAILURE TO STATE A CLAIM</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................ 3

LEGAL STANDARD .......................................................................................... 5

ARGUMENT ....................................................................................................... 7

I.     THE COMPLAINT DOES NOT ALLEGE A CLAIM UNDER THE FCA. ................... 7

    A.    The Complaint Fails to Allege a False Statement or Claim................................ 8

        1.    The Complaint Fails to Plead Falsity With Particularity. ......................... 8

            a.    Allegations Regarding False Certifications ...................... 9

            b.    Allegations Regarding Data Manipulation ....................... 9

            c.    Allegations Regarding Self Reporting Violations ........... 10

        2.    The Case Law Requires Dismissal Under Rule 9(b). ............................. 11

    B.    The Complaint Fails to Allege Scienter............................................................. 13

        1.    The Complaint Does Not Sufficiently Plead Allegations That Carrington Knew or Should Have Known That Some of the FHA Loans it Approved Were Ineligible for Insurance. .................................. 14

        2.    The Complaint Does Not Sufficiently Plead Allegations That Carrington Knew or Should Have Known That Borrowers Submitted Fraudulent Data. ...................................................................... 17

        3.    The Complaint Offers No More Than Insufficient Conclusory Allegations That Carrington Knew it Had a Self-Reporting Requirement. ........................................................................................... 18

    C.    The Complaint Fails to Allege Materiality. ....................................................... 19

        1.    The Complaint Amounts to No More Than Allegations of Contract or Regulatory Violations......................................................................... 20

        2.    The Complaint Does Not Allege That Carrington Had Knowledge That Certain Underwriting Requirements Were Material to HUD's Payment Decision. .................................................................................. 21

        3.    The Complaint Does Not Allege a Nexus Between Any Specific Mortgage Loan Default and Alleged Violations of FHA Underwriting Requirements................................................................... 22

II.    THE COMPLAINT FAILS TO STATE A COMMON LAW CAUSE OF ACTION. ............................................................................................................. 23

    A.    Relator Does Not Have Standing to Bring Common Law Claims. .................... 24

    B.    Carrington's Contractual Relationship with HUD Precludes Relator's Common Law Claims. ....................................................................................... 26

    C.    The Complaint Fails To State A Claim For Breach Of Fiduciary Duty. ............ 27

D. The Complaint Fails To State Claims For Gross Negligence and Negligence. ........................................................................................... 28

CONCLUSION ................................................................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison Engine Co. v. United States ex rel. Sanders*,
553 U.S. 662 (2008) ...................................................................................19

*Allstate Amusement Co. v. Pasinato*,
421 N.E.2d 374 (Ill. App. Ct. 1981) .........................................................27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .....................................................................................6

*Bankers Tr. Co. v. Old Republic Ins. Co.*,
959 F.2d 677 (7th Cir. 1992) .....................................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................5, 6

*United States ex rel. Bogina v. Medline Indus., Inc.*,
809 F.3d 365 (7th Cir. 2016) ........................................................11, 13, 17

*Borsellino v. Goldman Sachs Grp., Inc.*,
477 F.3d 502 (7th Cir. 2007) .....................................................................23

*United States ex rel. Bragg v. SCR Med. Transp., Inc.*,
2011 WL 1357490 (N.D. Ill. Apr. 8, 2011) ..............................................13

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) .......................................................................8

*Cincinnati Life Ins. Co. v. Beyrer*,
722 F.3d 939 (7th Cir. 2013) .....................................................................13

*City of Chicago v. Purdue Pharma L.P.*,
2016 WL 5477522 (N.D. Ill. Sept. 29, 2016) ...........................................20

*City of Livonia Emps.' Ret. Sys. v. Boeing Co.*,
711 F.3d 754 (7th Cir. 2013) .....................................................................19

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*,
290 F.3d 1301 (11th Cir. 2002) ................................................................6, 7

*United States ex rel. Conroy v. Select Med. Corp.*,
2016 WL 5661566 (S.D. Ind. Sept. 30, 2016) (Young, J.) .........................6

iii

*Cook Biotech Inc. v. ACell, Inc.*,
2005 WL 1473892 (N.D. Ind. June 21, 2005) .........................................................................28

*Doe v. Houchens Indus., Inc.*,
2015 WL 133706 (S.D. Ind. Jan. 9, 2015) (Young, J.)..........................................................13

*United States ex rel. Durcholz v. FKW Inc.*,
189 F.3d 542 (7th Cir. 1999) ...................................................................................................21

*United States ex rel. Fago v. M & T Mortg. Corp.*,
518 F. Supp. 2d 108 (D.D.C. 2007).........................................................................................22

*Farmers Elevator Co. of Oakville, Inc. v. Hamilton*,
926 N.E.2d 68 (Ind. Ct. App. 2010)........................................................................................27

*United States ex rel. Fowler v. Caremark Rx, L.L.C.*,
496 F.3d 730 (7th Cir. 2007) ...............................................................................6, 11, 12, 15

*United States ex rel. Garst v. Lockheed-Martin Corp.*,
328 F.3d 374 (7th Cir. 2003) ...........................................................................................6, 12

*United States ex rel. Grant v. Rush-Presbyterian/St. Luke's Med. Center*,
2001 WL 40807 (N.D. Ill. Jan. 16, 2001) ...............................................................................25

*United States ex rel. Grant v. Thorek Hosp.*,
2008 WL 1883454 (N.D. Ill. April 25, 2008) .........................................................................12

*United States ex rel. Graziosi v. Accretive Health, Inc.*,
2017 WL 1079190 (N.D. Ill. Mar. 22, 2017)............................................................................6

*Greg Allen ConsTr. Co. v. Estelle*,
798 N.E.2d 171 (Ind. 2003) ....................................................................................................26

*United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*,
895 F. Supp. 2d 872 (N.D. Ill. 2012) .................................................................................12, 13

*United States ex rel. Gross v. AIDS Research All. Chicago*,
415 F.3d 601 (7th Cir. 2005) ...............................................................................................5, 21

*United States ex rel. Hanna v. City of Chicago*,
834 F.3d 775 (7th Cir. 2016) ...............................................................................................6, 8

*Hassan v. Begley*,
836 N.E.2d 303 (Ind. Ct. App. 2005).................................................................................28, 29

*Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*,
   929 N.E.2d 722 (Ind. 2010) .......................................................................................29

*JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*,
   977 N.E.2d 354 (Ind. Ct. App. 2012) ........................................................................26

*Koehlinger v. State Lottery Comm'n of Ind.*,
   933 N.E.2d 534 (Ind. Ct. App. 2010).........................................................................26

*United States ex rel. Lee v. N. Adult Daily Health Care Ctr.*,
   2016 WL 4703653 (E.D.N.Y. Sept. 7, 2016) ..........................................................20

*United States ex rel. Lusby v. Rolls-Royce Corp.*,
   570 F.3d 849 (7th Cir. 2009) .......................................................................................8

*United States ex rel. Main v. Oakland City Univ.*,
   426 F.3d 914 (7th Cir. 2005) .....................................................................................15

*Megenity v. Dunn*,
   68 N.E.3d 1080 (Ind. 2017) .......................................................................................29

*United States ex. rel. Morison v. Res-Care, Inc.*,
   2017 WL 468287 (S.D. Ind. Feb. 3, 2017) (Young, J.) ......................................7, 12

*Morris v. Crain*,
   2017 WL 899957 (Ind. Ct. App. Mar. 7, 2017) ........................................................27

*Olcott Int'l & Co. v. Micro Data Base Sys., Inc.*,
   793 N.E.2d 1063 (Ind. Ct. App. 2003).......................................................................28

*Paul v. Home Bank SB*,
   953 N.E.2d 497 (Ind. Ct. App. 2011).........................................................................28

*Peters v. Forster*,
   804 N.E.2d 736 (Ind. 2004) .......................................................................................29

*United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*,
   152 F. Supp. 2d 443 (S.D.N.Y. 2001)........................................................................25

*United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*,
   2014 WL 3530747 (E.D. Wis. July 15, 2014) ..........................................................25

*United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*,
   836 F.3d 770 (7th Cir. 2016) .........................................................................7, 20, 25

*Rapkin Grp., Inc. v. Cardinal Ventures, Inc.*,
   29 N.E.3d 752 (Ind. Ct. App. 2015)........................................................................27

*Robison v. Caster*,
   356 F.2d 924 (7th Cir. 1966) ..........................................................................23, 24

*United States ex rel. Rockefeller v. Westinghouse Elec. Co.*,
   274 F. Supp. 2d 10 (D.D.C. 2003) .........................................................................25

*United States ex rel. Rockey v. Ear Inst. of Chicago, LLC*,
   92 F. Supp. 3d 804 (N.D. Ill. 2015) ................................................................17, 19

*United States ex rel. Scharff v. Camelot Counseling*,
   2016 WL 5416494 (S.D.N.Y.  Sept. 28, 2016).....................................................20

*United States ex rel. Sheet Metal Workers Int'l Ass'n v. Horning Invs., LLC*,
   828 F.3d 587 (7th Cir. 2016) .................................................................................18

*Silha v. ACT, Inc.*,
   807 F.3d 169 (7th Cir. 2015) .................................................................................24

*United States ex rel. Soulias v. Nw. Univ.*,
   2013 WL 3275839 (N.D. Ill. June 27, 2013) ........................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).................................................................................................4

*United States v. Bernstein*,
   533 F.2d 775 (2d Cir. 1976)...................................................................................28

*United States v. Hibbs*,
   568 F.2d 347 (3d Cir. 1977)...................................................................................22

*United States v. Hydroaire, Inc.*,
   1995 WL 86733 (N.D. Ill. Feb.  27, 1995) ............................................................27

*United States v. Pekin Mem'l Hosp.*,
   2008 WL 2705443 (C.D. Ill. July 9, 2008)............................................................25

*United States v. Sanford-Brown, Ltd.*,
   840 F.3d 445 (7th Cir. 2016) .................................................................................20

*United States v. Southland Mgmt. Corp.*,
   326 F.3d 669 (5th Cir.2003) ..................................................................................21

*Universal Health Servs., Inc. v. United States*,
    136 S. Ct. 1989 (2016) ................................................................................. *passim*

*United States ex rel. Upton v. Family Health Network, Inc.*,
    900 F. Supp. 2d 821 (N.D. Ill.2012) ...............................................................12

*Veal v. First Am. Sav. Bank*,
    914 F.2d 909 (7th Cir. 1990) ..........................................................................24

*Vermont Agency of Nat. Res. v. United States ex. rel. Stevens*,
    529 U.S. 765 (2000)........................................................................................24

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
    20 F.3d 771 (7th Cir. 1994) ............................................................................11

*United States ex rel. Walsh v. Eastman Kodak Co.*,
    98 F. Supp. 2d 141 (D. Mass 2000) ................................................................25

*Warfield v. Dorey*,
    55 N.E.3d 887 (Ind. Ct. App. 2016)................................................................27

*United States ex rel. Wildhirt v. AARS Forever, Inc.*,
    2011 WL 1303390 (N.D. Ill. Apr. 6, 2011) ................................................6, 12

*Wright v. Assocs. Ins. Cos*,
    29 F.3d 1244 (7th Cir.1994) ..............................................................................4

*United States ex rel. Yannacopoulos v. Gen. Dynamics*,
    Inc., 652 F.3d 818 (7th Cir. 2011) ....................................................7, 13, 16, 21

*Zoeller v. E. Chicago Second Century, Inc.*,
    904 N.E.2d 213 (Ind. 2009) ............................................................................27

**Statutes**

31 U.S.C. § 3729.........................................................................................................7, 13

31 U.S.C. § 3730.........................................................................................................5, 24

Page(s)

**Other Authorities**

24 C.F.R. § 203.5 ...................................................................................................16, 28

24 C.F.R. § 203.257 ..................................................................................................4, 26

5B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004
    & Supp. 2007) ........................................................................................................4

HUD Handbook 4000.2, REV-3 (2004) ......................................................................26

HUD Handbook 4155.1, REV-5 (2011) ......................................................................16

Defendant Carrington Mortgage Services, LLC ("Carrington") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint (Dkt. 1) pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6).

## INTRODUCTION

Congress created the Federal Housing Administration ("FHA") program to encourage mortgage lenders to make home ownership a possibility for a greater percentage of the population. Carrington participates in this program as a Direct Endorsement Lender, originating, underwriting, and closing FHA-insured mortgage loans. In her complaint, relator Michelle Calderon ("Relator") alleges that, from 2013 to 2015, Carrington engaged in a fraudulent practice of underwriting and closing FHA loans that it knew were ineligible for insurance under the FHA's Direct Endorsement Lender program. Attempting to recover the damages allegedly suffered by the United States, Relator asserts claims against Carrington under the False Claims Act ("FCA") and various state law theories. As explained in detail below, each of Relator's claims fails as a matter of law.

As a threshold matter, the Complaint's allegations fall woefully short of Rule 9(b)'s particularity requirement and fail to plead violations of the FCA or viable state law causes of action. In her Complaint, Relator alleges, in vague and conclusory fashion, that Carrington employed reckless underwriting practices in its residential mortgage lending business in three ways: First, Relator alleges that Carrington provided false certifications that certain loans it originated or refinanced qualified for FHA insurance coverage. Second, Relator alleges that unspecified Carrington employees manipulated the data entered into the automated underwriting system to determine what values would generate FHA acceptance, and then encouraged borrowers to fraudulently submit those values in support of their loan applications. And, third,

Relator alleges that Carrington knowingly failed to self-report the fact that these loans did not qualify for FHA insurance.

But nowhere does the Complaint include any of the particulars that are required by Rule 9(b) and that one would expect from someone claiming to have personal knowledge of such far-reaching fraud. Not one single loan or employee allegedly involved in the purported fraud is cited. The Complaint does not indentify which self-reporting requirement has purportedly been violated, much less how Carrington violated it. Nor does the Complaint point to specific loans for which the values entered into the automated underwriting system could not be supported by proper documentation. Absent such facts, Relator cannot satisfy Rule 9(b)'s heightened pleading standards and cannot state a viable claim for violation of the FCA.

Similarly, Relator's common law claims fail as a matter of law. Although Relator is authorized to bring claims on behalf of the United States for violations of the FCA, she lacks the standing necessary to bring state law claims arising out of the same conduct. Further, Carrington's contractual relationship with the U.S. Department of Housing and Urban Development ("HUD") precludes all of Relator's common law claims, since they are all premised on conduct governed by contract.

Although she now characterizes herself as a whistleblower, the reality is that Relator never reported a single instance of misconduct during her two years at Carrington. Instead, she waited over a year after her departure from Carrington before commencing this action on April 25, 2016. Under such circumstances, it is not surprising that, after having an opportunity to review the documents and information provided by Relator, the government chose not to intervene of behalf of the United States. Given the Complaint's lack of any substantive

allegations, and for the reasons set forth below, Carrington respectfully requests that this Court also decline to hear Relator's claims and dismiss this action in its entirety.

## FACTUAL BACKGROUND

Carrington is a residential mortgage lender and limited liability company organized and existing under the laws of Delaware, with its principal place of business in Anaheim, California. Compl. ¶ 11. From March 2013 to February 2015 (the "Covered Period"), Relator worked as an underwriter in Carrington's Fishers, Indiana office. *Id.* ¶ 10. The FHA, a part of HUD since 1934, is the largest insurer of residential mortgage loans in the world. *Id.* ¶ 12. Under the FHA Direct Endorsement Program, FHA-approved lenders with Direct Endorsement Authority ("Direct Endorsement Lenders") may underwrite mortgages for FHA insurance without prior HUD review. *Id.* ¶ 14.

During the Covered Period, Carrington served as a Direct Endorsement Lender and expanded the accessibility of homeownership, offering loans to underserved and creditworthy consumers who did not qualify for loans under conventional underwriting criteria. *Id.* ¶ 34. Because those loans met FHA's underwriting guidelines and program requirements, Carrington then submitted them to FHA for insurance coverage. *Id.* ¶¶ 14-15.

To evaluate and ultimately extend loans, Carrington used FHA's underwriting software ("TOTAL") and its own HUD-approved automated underwriting system ("AUS"). *Id.* at ¶¶ 23-24. TOTAL is a credit-rating algorithm maintained by FHA that works in conjunction with a HUD-approved AUS. *Id.* ¶¶ 8, 24. When considering a loan, Carrington entered various credit variables into the AUS, such as the borrower's monthly income, and TOTAL subsequently evaluated the borrower's overall credit and assigned an "accept/approve" rating or a "refer" rating. *Id.* ¶¶ 8, 24. Loans that received an "accept/approve" rating were subject to less stringent

documentation requirements and underwriter scrutiny. *Id.* ¶¶ 8, 25. Loans that received a "refer" rating were manually underwritten by Carrington. *Id.* ¶ 25.

When manually underwriting loans, Carrington collected and evaluated a variety of information about the borrower's credit and the property that would secure the loan, assessed the importance and effect of the information on the risk the loan presented, applied underwriting standards, and made a judgment about whether the borrower represented an acceptable credit risk for HUD. *Id.* ¶¶ 14, 17, 19, 26. At the end of this process, Carrington provided a loan-specific certification that the data used by Carrington had "integrity" and that the loan was "eligible for HUD mortgage insurance." *Id.* ¶¶ 31, 36; *see also* 09/2010 Form HUD-92900-A[1] at 3 (attached as Exhibit 1 to the accompanying Declaration of Jeanine Kerridge in support of Defendant's Motion to Dismiss, dated April 24, 2017). Once FHA insured the loan, a Mortgage Insurance Certificate was issued, creating a "contract of insurance" between the lender and HUD, which incorporated HUD's regulatory requirements and bound both parties "with the same force and to the same extent as if a separate contract had been executed relating to the insured mortgage." 24 C.F.R. § 203.257.

HUD also authorized Carrington to approve pre-existing FHA loans for refinancing. Compl. ¶ 29. Refinancing was another avenue to expand homeownership opportunities by lowering the borrower's monthly principal and interest payments. *Id.* In approving loans for refinancing, Carrington employed the same underwriting practices discussed above and would "make all certifications required for this mortgage as set forth in HUD Handbook 4000.4." *Id.*

---

[1] Form HUD-92900-A is incorporated into the Complaint. *See* Compl. ¶¶ 31-32, 36-37. The Supreme Court has instructed that a court is not limited to the four corners of the complaint and may consider documents "incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004 & Supp. 2007)). *See also Wright v. Assocs. Ins. Cos*, 29 F.3d 1244, 1248 (7th Cir.1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.").

¶ 32; *see also* Ex. 1 at 3-4 (09/2010 Form HUD-92900-A).  For both originated loans and subsequent refinancings, Carrington conducted quality control reviews to ensure that there was no fraud on the part of the borrower.  Compl. ¶ 38.

The purpose of the FCA is to encourage whistleblowers (known as "relators") to come forward early to expose (and stop) fraud on the government.  Accordingly, the FCA gives relators a considerable incentive:  they are entitled to up to 30% of whatever the government recovers.  31 U.S.C. § 3730(d).  The Relator in this case—Calderon—broadly alleges that Carrington certified loans that were not eligible for insurance or refinancing under the FHA guidelines, and asserts causes of action for violations of the FCA, as well as common law claims alleging breach of fiduciary duty, negligence, unjust enrichment, and payment under mistake of fact.  The Complaint makes these allegations without any reference to specific loans or employees that were involved in any of the alleged conduct.

As is customary in FCA cases, the Complaint remained under seal while the government evaluated the merits of the case to determine whether to intervene in the Lawsuit.  After a review of the materials, the United States declined to intervene on January 27, 2017 (Dkt. 10).  The Court thereafter unsealed the Complaint, and Relator served Carrington on or around March 3, 2017.  This Motion to Dismiss represents Carrington's first response to the Complaint.

## LEGAL STANDARD

Relator's Complaint is subject to the pleading requirements of Federal Rule of Civil Procedure 8 and, because it involves allegations of fraud, the heightened standards of Rule 9(b).  *United States ex rel. Gross v. AIDS Research All. Chicago*, 415 F.3d 601, 604 (7th Cir. 2005).  Rule 8 requires that a complaint provide "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

Given the nature of her allegations—a purported fraud committed by Carrington—Relator must also satisfy the requirements of Rule 9(b). *See United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016); *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003). Thus, Relator must detail the "who, what, when, where, and how" of the circumstances giving rise to Carrington's alleged false claims. *Hanna*, 834 F.3d at 779; *Garst*, 328 F.3d at 376; *United States ex rel. Conroy v. Select Med. Corp.*, 2016 WL 5661566, at *15 (S.D. Ind. Sept. 30, 2016) (Young, J.).

It is not enough to simply allege that a defendant's "performance fell so short that every or nearly every claim [it] submitted to the federal and state governments was false or fraudulent." *United States ex rel. Wildhirt v. AARS Forever, Inc.*, 2011 WL 1303390, at *3 (N.D. Ill. Apr. 6, 2011). Instead, the Relator must "identify <u>specific</u> false claims for payment or <u>specific</u> false statements made in order to obtain payment." *Garst*, 328 F.3d at 376 (emphasis in original). And when the alleged false claims are part of a larger fraudulent scheme involving numerous transactions, Relator must at least provide the particulars facts of "representative examples." *United States ex rel. Graziosi v. Accretive Health, Inc.*, 2017 WL 1079190, at *6 (N.D. Ill. Mar. 22, 2017).[2]

Rule 9(b)'s heightened pleading requirements "protect [defendants] from privileged libel (privileged because it is contained in a pleading)." *United States ex rel. Fowler v. Caremark Rx,*

---

[2]    And critical to this point, these details must be provided at the outset of the case: A relator cannot file suit and hope to "learn the complaint's bare essentials through discovery." *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313, n.24 (11th Cir. 2002).

*L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007) (overruled on other grounds by *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009)).  That protection is particularly important in FCA cases like this, both because of the high bounty offered to successful relators and because relators are frequently former employees who have an axe to grind against their ex-employers.  *See Clausen*, 290 F.3d at 1313 n.24 (recognizing that relators who fail to plead with specificity "needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements.").

## ARGUMENT

## I.  THE COMPLAINT DOES NOT ALLEGE A CLAIM UNDER THE FCA.

The FCA imposes liability upon anyone who "knowingly presents, or causes to be presented," to the government, "a false or fraudulent claim for payment or approval," or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)(A) & (B).  To establish civil liability under the FCA, a relator must state with sufficient particularity "(1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false.*"  United States ex rel. Yannacopoulos v. Gen. Dynamics*, Inc., 652 F.3d 818, 822 (7th Cir. 2011); *see also United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 777 (7th Cir. 2016) (same); *United States ex. rel. Morison v. Res-Care, Inc.*, 2017 WL 468287, at *2 (S.D. Ind. Feb. 3, 2017) (Young, J.) (same).  As explained below, the Complaint fails to adequately allege the elements of falsity, scienter, or materiality in the manner necessary to support Relator's FCA claims.  The failure to allege any one—much less all three—of these necessary elements requires the dismissal of Relator's claims.

## A. The Complaint Fails to Allege a False Statement or Claim.

Relator's allegations of falsity generally fall into three categories of conduct:  (1) reckless underwriting and falsely certifying loans for FHA insurance and refinancing; (2) manipulating data entered into TOTAL/AUS and communicating the results to borrowers; and (3) violation of HUD's self-reporting requirements.  For numerous reasons, the Complaint has not plausibly alleged that any category of conduct amounts to false statements or claims—and it certainly has not done so with the particularity required by Rule 9(b).  Most significantly, Relator does not pinpoint any specific loans as the basis of this suit; instead, over the course of more than 80 paragraphs of allegations, she makes only vague and conclusory statements regarding Carrington's general course of conduct during the Covered Period.

### 1. The Complaint Fails to Plead Falsity With Particularity.

To plead falsity, Relator must allege that Carrington improperly sought FHA insurance payouts on defaulted mortgage loans that did not originally meet HUD's underwriting requirements.  The Seventh Circuit has consistently held that, when bringing fraud claims, the plaintiff must describe "the who, what, when, where, and how [of the fraud]:  the first paragraph of any newspaper story."  *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009); *see also Hanna*, 834 F.3d at 779 (same).  In other words, Rule 9(b) requires the plaintiff to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).  Further, when alleging that a defendant engaged in a fraudulent course of conduct in violation of the FCA, the Seventh Circuit has made clear that a plaintiff must plead such particularized facts with respect to individual claims for payment.  As such, Relator must provide specific examples demonstrating that individual Carrington underwriters acted with the requisite

scienter in falsely certifying specific mortgage loans, each with unique circumstances, as eligible for FHA insurance or refinancing. Relator has not come anywhere close to meeting this requirement.

### a. Allegations Regarding False Certifications.

In her first attempt to plead falsity, Relator only generally alleges "material violation[s] of the applicable HUD underwriting guidelines" and "unacceptable risk" with respect to (1) in numerous *unspecified* mortgage loans (2) originated in *unspecified* locations over multiple years (3) by *unspecified* underwriters (4) certified in numerous *unidentified* loan-level certifications (5) by *unspecified* Carrington personnel. These allegations do not come close to satisfying the "who, what, when, where and how" requirement that this Circuit has endorsed. Compl. ¶¶ 38, 45.

Relator's Complaint gives no more specificity than the allegation that "[t]housands of the[] loans contained at least one material violation of the applicable HUD underwriting guidelines, and many of the loans contained two or more such violations." *Id.* ¶ 38. Also remarkable is the lack of any factual content regarding how the alleged widespread reckless underwriting was implemented. Was there some kind of agreement among the underwriters? Was there a meeting? An interoffice memo? A teleconference? A text message? Despite the fact that she was an underwriter at Carrington for two years, Relator cannot provide one example of fraud with the necessary detail.

### b. Allegations Regarding Data Manipulation.

Relator's second attempt to plead falsity fares no better. The Complaint loosely refers to Carrington's manipulation of AUS/TOTAL to enter data in support of loan applications "that lacked integrity." Compl. ¶ 39. But Relator fails to link this conduct to any individual loan-level transaction, any specific employee who manipulated data, or any particular location where the

supposed manipulation occurred. Nor does she offer any of these requisite details to support her allegation that Carrington "communicated the qualifying data point values to the borrowers or their agents, thus inviting borrower fraud." *Id.* ¶ 39; s*ee also Id.* ¶¶ 8, 41. In fact, Relator does not even allege that any of the data ultimately submitted by borrowers was actually false. Instead, all that can be gleaned from the Complaint is that "many Carrington loan officers and/or underwriters" continued to work with loan applicants to obtain the funding they needed to purchase or refinance their homes—the precise goals of the FHA program. *Id.* ¶ 39.

Further, the Complaint does not link this allegedly manipulated data to any false statement or claim presented by HUD. Relator alleges that Carrington entered hypothetical data points in AUS/TOTAL to determine the values that would result in an accept/approve rating. Compl. ¶¶ 8, 39-41. Notably, Relator does not allege that Carrington actually used the hypothetical data to make loans. Thus, the Complaint's citation of Mortgage Letter 05-15's guideline that lenders are not to "willfully manipulate the application variables … to obtain an accept/approve risk classification," *Id.* ¶ 27, is entirely irrelevant. Relator never alleges that Carrington willfully manipulated the application variables for a particular loan *in order to* obtain an accept/approve risk classification *for that loan.* Relator likewise never alleges that any data on which a loan ultimately was approved was not supported by documentary evidence in the loan file. As such, nothing is alleged that would suggest that the way Carrington purportedly used TOTAL or its AUS was not objectively reasonable or common industry practice.

### c.       Allegations Regarding Self Reporting Violations.

Relator's third attempt to plead falsity also fails as it does not cite to any specific loans, specific employees involved in the alleged violation of a self-reporting requirement, or the location of the alleged conduct. Relator merely speculates that "Carrington repeatedly violated HUD's self-reporting requirement" and "[by] fail[ing] to comply with the self-reporting

requirement, [Carrington] conceal[ed] from HUD many of its bad loans and questionable underwriting practices." Compl. ¶ 9. As an initial matter, the Complaint does not even bother to specify the requirement that was allegedly violated, and there is no other reference to this "self-reporting requirement" in the remaining 80 paragraphs of the Complaint.

More substantively, Relator alleges that "Carrington knew that HUD rules required it to perform quality control reviews … and to self-report … loans that it identified as having been affected by fraud or other serious violations." Compl. ¶ 9. But, the Complaint fails to allege—never mind with any particularity—that Carrington failed to perform such reviews. Indeed, Relator later contradicts this allegation by acknowledging that Carrington performed "mandatory quality control reviews" on 100% of the loans it made, (*see Id.* ¶ 38) and fails to point to even one loan that Carrington determined to be fraudulent. Thus, the reader is left to conclude that Carrington did exactly that which HUD required of it.

### 2. The Case Law Requires Dismissal Under Rule 9(b).

The Seventh Circuit has made clear that Rule 9(b) exists to give defendants "fair notice" of the claims brought against them and requires that "the plaintiff who pleads fraud must 'reasonably notify the defendants of their purported role in the scheme.'" *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994). Indeed, "a public accusation of fraud can do great damage to a firm before the firm is exonerated in litigation." *United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016). Thus, courts routinely dismiss complaints built on even more particular allegations of falsity than are found in Relator's Complaint.

For example, in *Fowler*, the relators alleged that a percentage of federal employees returned unused prescription drugs to the defendant, yet the defendant continued to bill the

government for the cost of these medications or failed to provide the government with refunds. 496 F.3d at 741.  But even though the relator in *Fowler* identified specific prescriptions affected by the alleged fraud, the Seventh Circuit affirmed the lower court's dismissal of the complaint, stating that the fraud allegations were deficient as they did not "present any evidence *at an individualized transaction level* to demonstrate that" the defendant had submitted a false claim. *Id.* at 742 (emphasis in original).  Similarly, in *Gross*, the Seventh Circuit affirmed the dismissal of generalized and "conclusory" allegations where the complaint only described categories of false statements rather than the specific statements themselves.  415 F.3d at 604-05.  And in *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 895 F. Supp. 2d 872, 879 (N.D. Ill. 2012), the court granted the defendant's motions to dismiss because "no single instance [of fraud was] definitively identified."  The court noted that although the relator named a "group of specified doctors," he did not link any specific check to a specific prescription, patient, or doctor, on a specific date, upon order of a specific employee.  *Id.*[3]

Relator's allegations, which fail to provide the necessary specifics regarding even *one* loan transaction are exactly the same kind of non-specific, non-actionable fraud allegations that have been dismissed by other courts.  Absent more, Relator's FCA claim should be dismissed. *See Morison*, 2017 WL 468287, at *3 (Young, J.) (granting motion to dismiss where qui tam action "failed to specifically identify a single act of fraud"); *Grenadyor*, 895 F. Supp. 2d.  at 878

---

[3]    *Fowler*, *Gross* and *Grenadyor* are not outliers, but rather reflect the general practice of Courts within the Seventh Circuit to dismiss FCA claims when the relator fails to support her FCA claim with particular allegations of fraud at the individual transaction level.  *See also e.g., Garst,* 328 F.3d at 376-77 (affirming dismissal of a complaint where the relator repeatedly failed to heed the district court's instructions to identify specific false claims); *United States ex rel. Upton v. Family Health Network, Inc.*, 900 F. Supp. 2d 821, 828 (N.D. Ill.2012) ("To survive a motion to dismiss, Relators must identify specific false claims for payment or specific false statements made in order to obtain payment.") (internal quotation marks omitted); *Wildhirt*, 2011 WL 1303390, at *3 (a relator "must plead with particularity the details of actual claims submitted to the government") (emphasis in original); *United States ex rel. Grant v. Thorek Hosp.*, 2008 WL 1883454, at *3 (N.D. Ill. April 25, 2008) (dismissing qui tam action where complaint did not include any details regarding "the date on which any claim was submitted by Thorek; the content of any claim; the identification number of any claim; who submitted any false claim to the government; what amount of reimbursement improperly was claimed from the government; when or where those claims were submitted; or how any claims submitted were false.").

(noting that particularity requires at least one specific instance of the fraud alleged); *United States ex rel. Soulias v. Nw. Univ.*, 2013 WL 3275839, at *3 (N.D. Ill. June 27, 2013) ("To satisfy Rule 9(b) for an FCA claim, a relator must plead at least some actual examples of false claims."); *United States ex rel. Bragg v. SCR Med. Transp., Inc.,* 2011 WL 1357490, at *3 (N.D. Ill. Apr. 8, 2011) (a relator "is required to plead specific and concrete examples of … false claims").[4]

### B.  The Complaint Fails to Allege Scienter.

The FCA also requires plaintiffs to allege specific, particularized facts demonstrating that the defendant had "actual knowledge" of the falsehood, or acted in "deliberate ignorance" or "reckless disregard" of it. *Yannacopoulos,* 652 F.3d at 833 (citing 31 U.S.C. § 3729(b)(4)); *see also Doe v. Houchens Indus., Inc.*, 2015 WL 133706, at *4 (S.D. Ind. Jan. 9, 2015) (Young, J.) (same). The Supreme Court has recently stressed the importance of the FCA's scienter requirement, noting that it is "stringent," "rigorous," and intended to address "concerns about fair notice and open-ended liability." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1994, 2002 (2016).

Relator alleges that Carrington "knowingly, or acting with deliberate ignorance and/or with reckless disregard for the truth, presented or caused to be presented false or fraudulent claims" and "false records and/or statements." Compl. ¶¶ 46, 51. To support this conclusion, Relator alleges that (1) Carrington knew or should have known that the certifications and claims it made were false, (2) Carrington knowingly or recklessly encouraged borrower fraud, and

---

[4]     Relator's use of the caveat "upon information and belief" does not save her allegations. Compl. ¶¶ 42, 46, 47, 52, 61, 67, 79, 80. The Seventh Circuit has made clear that allegations of fraud made "on information and belief" do not meet Rule 9(b)'s particularity requirement. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013); *see also Bogina*, 809 F.3d at 370 ("Allegations based on 'information and belief thus won't do in a fraud case—for on 'information and belief' can mean as little as 'rumor has it that....'"); *Bankers Tr. Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683-84 (7th Cir. 1992) ("The allegations of fraud that [plaintiff] *was* required to make, however, are made in its complaint on 'information and belief,' a clearly improper locution under the current federal rules, which impose ... a duty of reasonable precomplaint inquiry not satisfied by rumor or hunch.").

(3) Carrington knew that it was required to report that borrower fraud under an unidentified HUD self-reporting requirement. Yet nowhere in the Complaint does Relator provide the particularized details necessary to support an inference of scienter. Accordingly, Relator's FCA claim fails on this basis as well.

1.      **The Complaint Does Not Sufficiently Plead Allegations That Carrington Knew or Should Have Known That Some of the FHA Loans it Approved Were Ineligible for Insurance.**

Simply stating a conclusion does not make it so. The Complaint states that Defendant knew or should have known that some of the loans it was approving were ineligible for insurance or refinancing:

- Carrington knew, or should have known, that a substantial number of the loans that it approved for government insurance and refinancing contained unacceptable risk and did not qualify for such insurance or refinancing. Compl. ¶ 38.

- Carrington knew, or should have known, that it was regularly approving for government insurance and refinancing a substantial number of loans that were not eligible for such insurance or refinancing. Compl. ¶ 45.

- Carrington knowingly, or acting in deliberate ignorance and/or with reckless disregard for the truth, presented or caused to be presented false or fraudulent claims for approval. Compl. ¶ 46.

- Carrington knowingly, or acting in deliberate ignorance and/or with reckless disregard for the truth, made, used, or caused to be made or used, false records and/or statements material to false or fraudulent claims in connection with numerous FHA loans that Carrington falsely certified were eligible for government insurance or refinancing. Compl. ¶ 51.

Relator cites to no documents or testimony to support these conclusory allegations of scienter. Indeed, even if Relator is correct that Carrington submitted false certifications, Relator must also cite facts establishing that each certification was signed by an identified person who knew or should have known that it was false when made. Without any particularized allegations of scienter, the allegedly false certifications would only give rise to a potential breach of contract claim, and not an FCA claim.

In *Fowler*, the Seventh Circuit reached the same result. There, relators alleged that the defendant claimed reimbursements for prescription drugs received by federal employees even after those employees returned the drugs to the defendant unused. 496 F.3d at 743. The Seventh Circuit held that without any particularized allegations of actual knowledge or reckless disregard, the conduct described by the relators—failing to issue refunds for unused products—merely rose to a "breach of contract dispute," which was not actionable under the FCA. *Id.* As the *Fowler* court explained, were it to incorrectly take the relators' position on scienter, it "would transform every inaccurate claim into a false claim and consequently replace the Act's knowledge requirement with a strict liability standard." *Id.*; *see also United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005) ("[F]raud requires more than breach of promise: fraud entails making a false representation, such as a statement that the speaker will do something it plans not to do. Tripping up on a regulatory complexity does not entail a knowingly false representation.").

Relator attempts to remedy this deficiency by alleging that Carrington should have known it was making false claims because unidentified loans suffered from "common defects," such as missing documents and inconsistencies in figures (Compl. ¶¶ 6, 34), and because the loans Carrington approved for refinance "were delinquent at the time of closing." *Id.* at ¶ 6. But these allegations do not create an inference of scienter for two reasons.

First, without alleging that the "common defects" or "delinquent loans" were impermissible, Relator cannot establish that Carrington knew or should have known that the defects or delinquencies rendered the loans ineligible for FHA insurance. Relator simply states that the "common defects" were violations of the "applicable underwriting requirements" and thus contained "unacceptable risk" that should have been "obvious" to underwriters. Compl.

¶¶ 6, 34, 38. But aside from citing (without quotation) the HUD Handbook's requirement that a mortgage "comply with HUD underwriting requirements," (*see* Compl. ¶ 32; HUD Handbook 4000.4, Appendix 3) the Complaint does not specify which requirements, if any, relate to the "common defects," how Carrington violated those requirements, or whether Carrington's certification of a loan depended upon fulfillment of these particular requirements.[5]

Similarly, Relator alleges that Carrington improperly approved delinquent loans for refinancing even though HUD Handbook 4155.1 requires that "[t]he borrower is current on the loan being refinanced for the month due prior to the month in which he/she closes the refinancing, and for the month in which he/she closes the refinancing." Compl. ¶¶ 30, 37; HUD Handbook 4155.1.3.A.1.h. But, Relator completely ignores another provision of the same handbook stating that "if the mortgage is delinquent by no more than two monthly payments, the refinancing lender may pay the borrower's mortgage to bring the payments current … " HUD Handbook 4155.1 REV-5 ¶ 1-12(D)(6). Tellingly, Relator does not allege that Carrington failed to bring the delinquent mortgages current, and her failure to do so prevents her from demonstrating scienter.

Second, and in any event, the FCA "does not penalize all factually inaccurate statements … Innocent mistakes or negligence are not actionable." *Yannacopoulos,* 652 F.3d at 832. Thus, even assuming that the "common defects" and delinquencies rendered the loans ineligible for approval and that Carrington's subsequent certifications were inaccurate, there is nothing to suggest that these were knowing rather than inadvertent errors by Carrington.

---

[5] For example, Relator does not point to an underwriting requirement addressing the "common defects," such as missing documents and inconsistencies in figures. In fact, the certification only refers to HUD Handbook 4000.4, Ex. 1 at 3 (09/2010 Form HUD-92900-A), which requires that the mortgage comply with "HUD underwriting requirements as contained in all outstanding HUD handbooks." Compl. ¶ 32; HUD Handbook 4000.4, Appendix 3. It does not, however, allege any particular underwriting requirement that directly relates to the "common defects." Without directly tying the listed common defects to a specific requirement for eligibility, Calderon cannot establish knowledge.

Underwriting a loan is essentially a discretionary risk assessment made by underwriters, expressly authorized by HUD and admitted by Relator herself. Compl. ¶¶ 16-19, 26; 24 C.F.R. § 203.5(d) ("The mortgagee shall evaluate the mortgagor's credit characteristics, adequacy and stability of income to meet the periodic payments under the mortgage and all other obligations, and the adequacy of the mortgagor's available assets to close the transaction … "). The subjective nature of the assessment means that, even when program guidelines and documentation are taken into account, the various strengths and weaknesses of an application may differ from one loan to the next. Absent more, a subjective error in judgment cannot support an FCA claim. *United States ex rel. Rockey v. Ear Inst. of Chicago, LLC,* 92 F. Supp. 3d 804, 820 (N.D. Ill. 2015) ("[E]rrors based simply on faulty calculations or flawed reasoning, innocent mistakes, or negligence are not false under the FCA.").[6]

### 2. The Complaint Does Not Sufficiently Plead Allegations That Carrington Knew or Should Have Known That Borrowers Submitted Fraudulent Data.

Relator's allegation that borrowers submitted false data, by itself, also does not establish an inference of scienter. As discussed, Relator fails to allege any specific instance in which a borrower submitted false information to Carrington and that such information caused Carrington to submit a mortgage for FHA coverage. *See supra* I-A-1. But, even if Relator had alleged such facts with the requisite particularity, she has not alleged any facts demonstrating that Carrington knew that such data was fraudulent.

Relator's loose allegation that Carrington's communication of qualifying data points to borrowers should have put it on alert that borrowers may have submitted fraudulent documents, *see* Compl. ¶¶ 8, 39, 41, is highly speculative and does not support an inference of "gross

---

[6] Any resort to the crutch of "upon information and belief" in the Complaint is insufficient to allege scienter. *See* Compl. ¶¶ 42, 46, 47, 52. The Seventh Circuit has held that such allegations, without more, do not meet Rule 9(b)'s particularity requirement. *Beyrer*, 722 F.3d at 948; *Bogina*, 809 F.3d at 370.

negligence" as is required by the Seventh Circuit. *See United States ex rel. Sheet Metal Workers Int'l Ass'n v. Horning Invs., LLC*, 828 F.3d 587, 593 (7th Cir. 2016). Relator provides no specific examples confirming that the same borrowers who received this information subsequently submitted loan applications, whether those loan applications were approved by TOTAL, or whether the qualifying data ultimately submitted by the borrowers was fraudulent. In that respect, Relator's Complaint is no more than non-actionable guesswork.

Equally inadequate to establish scienter is Relator's allegation that Carrington went a step further by impermissibly and repeatedly manipulating borrower data until it received an "approve/accept" rating from TOTAL and then communicated those qualifying values to borrowers. Compl. ¶¶ 8, 39, 40, 41. The Complaint does not allege that the hypothetical data entered into the system was incorrect or unsupported when entered, or that such data was actually used to make loans. *See supra* I-A-1. Moreover, there is nothing cited in the Complaint that prohibits the manner in which Carrington purportedly used TOTAL or suggests that such use was anything other than industry practice. *Id.*

### 3. The Complaint Offers No More Than Insufficient Conclusory Allegations That Carrington Knew it Had a Self-Reporting Requirement.

Relator alleges that Carrington "kept a substantial number of its deficient loans a secret" by "fail[ing] to comply with [HUD's] self-reporting requirement," and that it "knew that HUD rules required it to perform quality control reviews and self-report loans affected by fraud and other serious violations." Compl. ¶ 9. As discussed in section I-A-1, Relator's lack of particularized allegations fail to demonstrate any false claims or statements allegedly made by Carrington. The same paucity of details should prevent the Court from drawing an inference that Carrington acted with scienter in this regard.

Any quality control measures Carrington performed after extending a loan cannot be probative of an underwriter's state of mind when certifying a loan for insurance prior to closing. *City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 758 (7th Cir. 2013) (holding that "fraud by hindsight" pleading is improper). Thus, even if Carrington failed to conduct such post-closing reviews—an allegation expressly contradicted by Relator in her own Complaint (Compl. ¶ 38)—that failure would not create an inference that Carrington submitted improper loans for FHA insurance coverage. Nor does Relator point to any specific instance in which Carrington indentified a loan affected by fraud and failed to report that finding to HUD. Without such an allegation, there can be no inference that Carrington acted with scienter by failing to self-report its underwriting mistakes.

### C. The Complaint Fails to Allege Materiality.

Materiality is an independent prerequisite of any FCA claim. *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 665 (2008) (explaining that to be actionable, a false statement must be "material to the Government's decision to pay or approve the false claim"); *accord Rockey*, 92 F. Supp. 3d at 822. Less than a year ago, the Supreme Court announced in *Universal Health Servs., Inc.* that the FCA's materiality requirement is "rigorous" and "demanding." 136 S. Ct. at 1994, 2002. In defining that requirement, the Supreme Court set out standards which Relator has plainly failed to meet.

As a threshold matter, Relator has failed to demonstrate materiality under Rule 9(b) because she has not identified *particular* loans that were affected or *specific* employees who were involved in the alleged fraud. *See supra* Section I-A-1. Further, as explained below, Relator's Complaint also fails to satisfy the materiality requirement for separate reasons.

**1.    The Complaint Amounts to No More Than Allegations of Contract or Regulatory Violations.**

The Supreme Court has ruled that an allegedly false statement is "material" only if the government "would not have paid the claim had it known of [the alleged falsity]." *Universal Health Servs., Inc.*, 136 S. Ct. at 2004. Accordingly, Relator must allege that the supposed violations are so central to the FHA program that HUD routinely denies insurance, "routinely rescinds contracts," or routinely requires indemnification based on the alleged violations. *Id.* at 2001. Courts applying the *Universal Health Services, Inc.* test have not hesitated to dismiss complaints for failing to plead facts showing this centrality. *See e.g.*, *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447-8 (7th Cir. 2016); *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 779 (7th Cir. 2016); *City of Chicago v. Purdue Pharma L.P.*, 2016 WL 5477522 at *15 (N.D. Ill. Sept. 29, 2016); *United States ex rel. Scharff v. Camelot Counseling*, 2016 WL 5416494, at *8-9 (S.D.N.Y. Sept. 28, 2016); *United States ex rel. Lee v. N. Adult Daily Health Care Ctr.*, 2016 WL 4703653, at *11-12 (E.D.N.Y. Sept. 7, 2016).

Relator fails to satisfy the materiality requirement in this case because the Complaint merely alleges that the purported false certifications were required for "loans for FHA mortgage insurance," Compl. ¶ 14, and some "loans contained at least one material violation of the applicable HUD underwriting guidelines." *Id.* ¶ 38. The Complaint does not, however, point to specific false certifications that caused the FHA to insure a mortgage. Nor does the Complaint explain how, if at all, FHA would have changed course had it learned of these purported violations. But as the Supreme Court explained in *Universal Health Services*, "the False Claims Act is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Universal Health Servs., Inc.*, 136 S. Ct. at 2003-4 (internal citation and quotation marks omitted). Thus, and absent more, Relator has not shown that the

alleged violations were sufficiently material to support an FCA claim.  *See Yannacopoulos*, 652 F.3d at 824 n. 4 ("Violations of laws, rules, or regulations alone do not create a cause of action under the FCA."); *Gross,* 415 F.3d at 604 ("An FCA claim premised upon an alleged false certification of compliance … also requires that the certification of compliance be a condition of or prerequisite to government payment."); *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 n.2 (7th Cir. 1999) ("[T]he FCA is not an appropriate vehicle for policing technical compliance with administrative regulations.").[7]

> ## 2. The Complaint Does Not Allege That Carrington Had Knowledge That Certain Underwriting Requirements Were Material to HUD's Payment Decision.

In *Universal Health Services*, the Supreme Court also held that an FCA complaint must allege facts to show that "the defendant knowingly violated a requirement *that the defendant knows is material* to the Government's payment decision."  136 S. Ct. at 1996 (emphasis added). Thus, a complaint must plead facts showing that "the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement" at issue.  *Id.* at 2003.  Relator has no hope of alleging the requisite knowledge when she has not even alleged the *specific* underwriting requirement that was violated.  Further, the Complaint does not allege that FHA consistently refused to pay claims on loans noncompliant with any FHA guidelines, never mind that Carrington knew that fact.  For example, Relator does not allege that Carrington knew that the FHA refused to pay claims (or sought reimbursement or indemnification) in all instances where pay stubs were missing or where the borrower's rental history had not been verified. Instead, the Complaint merely asserts in boilerplate language that Carrington "knew, or should have known,

---

[7]      *See also United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 684 (5th Cir.2003) ("[T]he punitive treble damages and penalties afforded by civil FCA actions are not interchangeable with remedies for ordinary breaches of contract.").

that it was regularly approving for government insurance and refinancing a substantial number of loans that were not eligible for such insurance or refinancing."  Compl. ¶ 45.  That simply does not allege the facts required to demonstrate scienter under the FCA.

> **3.    The Complaint Does Not Allege a Nexus Between Any Specific Mortgage Loan Default and Alleged Violations of FHA Underwriting Requirements.**

To sufficiently allege that HUD "would not have paid the claim had it known of the alleged falsity," it is not enough for the relator to identify a payment on a specific defaulted mortgage loan—which Relator has not done—and then declare that the payment must have been the product of fraud.  *Universal Health Servs., Inc.*, 136 S. Ct. at 2004.  Rather, a relator must allege that purported falsity led to or caused the ultimate damages to the government—here the default of a loan and subsequent claim against HUD's insurance coverage.

Courts in FCA cases arising in similar mortgage contexts have dismissed claims where the alleged misstatements did not relate to the borrower's ability to stay current on the loan. *See e.g., United States v. Hibbs*, 568 F.2d 347, 349-52 (3d Cir. 1977) (as applied to FHA loans, "the false information furnished to the government [must bear] upon the likelihood of the applicants meeting mortgage payments, [such that] the misrepresentation had a causal connection with the subsequent defaults"); *United States ex rel. Fago v. M & T Mortg. Corp.*, 518 F. Supp. 2d 108, 122 (D.D.C. 2007) ("[I]f the subject matter of the alleged misrepresentation is unrelated to the ultimate reason for the borrower's default (and the claim against HUD that flows from that default) Plaintiff cannot recover any damages.").

Here too, Relator does not assert that any missing paystub, or failure to verify a borrower's rental history, caused the borrower to default on the loan. Nor does the Complaint connect any specific mortgage loan default with the alleged inadequacies in Carrington's self-

reporting practices. Thus, she cannot establish that these "common defects" or self-reporting practices were material to HUD's decision to pay on a defaulted loan.

Of course, with the FHA insurance program—as is true in any insurance program—a certain amount of losses are to be expected. Underwriting involves judgment and discretion, and the mortgage loans at issue here are in many ways at greater risk of default than other mortgage loans since the very nature of the FHA program is to expand homeownership to borrowers unable to qualify for conventional mortgage loans. But the mere existence of an underwriting deficiency does not necessarily mean that the mortgage loan will later default. Nor does it follow that any later default was necessarily caused by the deficiency or that HUD would not have paid the insurance claim after being made aware of the deficiency. In fact, Relator does not assert that the borrower's ability to repay the loan was anything other than how it was represented. She does not assert that, had the paystub not been missing, or had the borrower's rental history been verified, the loan would not have defaulted for some other reason—a job layoff, a divorce, poor health, changed economic circumstances, or a decline in housing prices. The absence of such allegations means that materiality has not been pled.

## II.    THE COMPLAINT FAILS TO STATE A COMMON LAW CAUSE OF ACTION.

Although the FCA causes of action are the gravamen of the Complaint, Relator also asserts common law claims for breach of fiduciary duty, negligence, unjust enrichment, and payment by mistake of fact. To the extent such claims are premised on Relator's allegations of fraudulent conduct—as is the case for Relator's negligence and breach of fiduciary duty claims—these claims should be dismissed for failure to comply with Rule 9(b). *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (Rule 9(b) applies to "averments of fraud" and thus the relevant inquiry is whether the factual allegations giving rise to the claim "[are] premised upon a course of fraudulent conduct."); *Robison v. Caster,* 356 F.2d 924, 925

(7th Cir. 1966) (breach of fiduciary duty claim that attempted to assert a "scheme to defraud" triggered Rule 9(b)); *Veal v. First Am. Sav. Bank,* 914 F.2d 909, 912-13 (7th Cir. 1990) (applying Rule 9(b) to breach of fiduciary duty and negligence claims because "the facts alleged in support of both counts would constitute fraud [  ] if proven").

Further, as discussed below, the common law claims fail because (1) Relator lacks standing to assert them, (2) HUD's contractual relationship with Carrington precludes them, and (3) Relator fails to adequately plead the specific elements of these claims. For all these reasons, the common law claims should be dismissed.

### A. Relator Does Not Have Standing to Bring Common Law Claims.

"To establish Article III standing, a plaintiff must show (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (internal quotation marks omitted). "As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing the elements of Article III standing." *Id.*

The FCA permits private citizens to "bring a civil action for a violation of section 3729" of the FCA on behalf of that person and the United States. 31 U.S.C. § 3730(b)(1). The FCA also allows a relator, such as Calderon, to proceed with an action where the United States declines to intervene, as it has done here. *See Id.* at § 3730(b)(4); Dkt. 10. Indeed, as the Supreme Court has explained, "the FCA can reasonably be regarded as effecting a partial assignment of the United States' damages claim" to the Relator. *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000). Thus, the relator is deemed to have standing to seek damages arising from the false claim. *Id.* at 773-74.

The FCA does not, however, "give relators the right to assert common law claims on behalf of the United States." *United States ex rel. Grant v. Rush-Presbyterian/St. Luke's Med. Center*, 2001 WL 40807 (N.D. Ill Jan 16, 2001); *see also United States v. Pekin Mem'l Hosp.*, 2008 WL 2705443, at *5 (C.D. Ill. July 9, 2008) (dismissing common law claims where government did not intervene and relator lacked standing to bring them).[8]  That is because it is the government who has suffered the alleged injury in fact, not the relator. *See also United States ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F.Supp.2d 10, 14 (D.D.C. 2003) (holding that a relator does not have standing to assert common law claims based upon injury sustained by the United States).

Here, where the government has chosen not to intervene (Dkt. 10) and Relator purports to bring the claims herself pursuant to 31 U.S. § 3730, she lacks standing to bring her common law claims. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC* is instructive.  In that case, the relator brought a *qui tam* action under the FCA in which the government chose not to intervene.  2014 WL 3530747, at *1 n.1 (E.D. Wis. July 15, 2014), *aff'd in part, rev'd in part and remanded sub nom on unrelated grounds United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770 (7th Cir. 2016).  And, as the *Presser* court explained, "[a]lthough a private individual has standing to bring suit in federal court on behalf of the United States *under the False Claims Act,* the same cannot be said of claims *under common law* because the FCA's *qui tam* provision statutorily designate[s] private individuals as the United States' agent to bring a civil action *only for* violations of Section 3729of the FCA." *Presser*, 2014 WL

---

[8]        *See also United States ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 14 (D.D.C. 2003) (holding that a relator does not have standing to assert common law claims based upon injury sustained by the United States); *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 149 (D. Mass 2000) (holding that relator lacked standing to bring claims of fraud, unjust enrichment, and payment by mistake of fact on behalf of the United States); *United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 452 (S.D.N.Y. 2001) (holding that relator lacked standing to bring common law claims for unjust enrichment, fraud, and mistake of fact on behalf of the United States).

3530747, at *5 (emphasis in original).  Accordingly, the Presser court dismissed the relator's common law claims, *id.*, and this Court should do the same.

### B. Carrington's Contractual Relationship with HUD Precludes Relator's Common Law Claims.

For each loan HUD endorsed, a Mortgage Insurance Certificate was issued creating a "contract of insurance" between Carrington and HUD.  This contract incorporated HUD's regulatory requirements and bound both parties "with the same force and to the same extent as if a separate contract had been executed relating to the insured mortgage."  24 C.F.R. § 203.257; *see also* HUD Handbook 4000.2, REV-3, § 1-5 (2004) ("FHA's endorsement of the mortgage and issuance of an electronic Mortgage Insurance Certificate (MIC) *creates a contract* of mortgage insurance subject to the regulations in effect at that time."  (emphasis added)).  All of Realtor's common law claims are precluded by the existence of this contractual relationship.

Indiana courts have long held that a tort claim cannot be asserted when the conduct in question is governed by a contract.  *See Greg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 175 (Ind. 2003) (Where the source of a party's duty to another arises from a contract, "tort law should not interfere."); *Koehlinger v. State Lottery Comm'n of Ind.*, 933 N.E.2d 534, 542 (Ind. Ct. App. 2010) ("[T]he question is not whether [the plaintiffs] have, as we assume, adequately pled their tort claims, but, rather, whether [the defendant] is alleged to have done anything that constituted an independent tort if there were no contract.") (internal quotation marks omitted); *JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 365-66 (Ind. Ct. App. 2012) (dismissing tort claims arising out of contractual relationship between parties).  As Relator's gross negligence, negligence and breach of fiduciary duty claims rely on allegations that Carrington violated the very regulatory requirements incorporated into the parties' contracts, Relator's tort claims should be dismissed.

Similarly, Carrington's contractual relationship with HUD precludes Relator from recovering under the quasi-contract theories of unjust enrichment or payment under mistake of fact. A court can only grant equitable relief to a party upon a showing that no adequate remedy at law exists. *Allstate Amusement Co. v. Pasinato*, 421 N.E.2d 374, 376 (Ill. App. Ct. 1981); *see also United States v. Hydroaire, Inc.*, 1995 WL 86733, at *6 (N.D. Ill. Feb. 27, 1995) (dismissing claims for unjust enrichment and mistake of fact where FCA and contract actions were "adequate remed[ies] at law"); *Warfield v. Dorey*, 55 N.E.3d 887, 894 (Ind. Ct. App. 2016) ("It is generally acknowledged that in the *absence of an express contract*, a party may recover under the theory of unjust enrichment, or *quantum meruit*.") (first emphasis added); *Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E. 2d 213, 221 (Ind. 2009) ("When the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law."). Here, Relator has failed to show that no adequate remedy at law exists: in fact, the parties' contractual relationship permits HUD to "request reimbursement or indemnification" from Carrington for "bad loans." Compl. ¶ 9.

### C.     The Complaint Fails To State A Claim For Breach Of Fiduciary Duty.

To properly state a breach of fiduciary duty claim, the relator must allege "(1) the existence of a fiduciary relationship, (2) breach of the duty owed by the fiduciary to the beneficiary, and (3) harm to the beneficiary." *Morris v. Crain*, 2017 WL 899957, at *6 n.5 (Ind. Ct. App. Mar. 7, 2017); *accord Rapkin Grp., Inc. v. Cardinal Ventures, Inc.*, 29 N.E.3d 752, 757 (Ind. Ct. App. 2015); *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010).

Relator's fiduciary duty claim cannot even overcome the first hurdle. For example, although Relator generally asserts the existence of such a duty, Compl. ¶ 55, she does not allege facts that would allow the Court to conclude that any such relationship exists. And conclusory

claims of this sort carry no weight, especially where the referenced HUD rules make clear that no such fiduciary relationship exists between Carrington and HUD. Rather than "empower[ing] Carrington to obligate HUD to insure and guarantee loans that Carrington issued without any independent review by HUD," (*id.*) HUD maintains extensive review and oversight over Carrington's FHA program lending activities.[9] *See, e.g.*, 24 C.F.R. § 203.5(a). Nor can a lender such as Carrington "obligate" HUD to insure mortgage loans since Carrington only submits an "application" for insurance which must be approved by HUD. Thus, the FHA program's statutes and rules do not expressly impose a fiduciary duty on lenders, and there is no basis for finding an implied fiduciary duty.

The breach of fiduciary duty claim also fails because an arm's-length, contractual relationship—such as the one between Carrington and HUD—cannot give rise to a fiduciary relationship. *See Paul v. Home Bank SB*, 953 N.E.2d 497, 504 (Ind. Ct. App. 2011) (explaining that "a business or 'arm's length' contractual relationship does not give rise to a fiduciary relationship"); *Olcott Int'l & Co. v. Micro Data Base Sys., Inc.*, 793 N.E.2d 1063, 1073 (Ind. Ct. App. 2003) ("When two parties are involved in an arm's length, contractual arrangement, a fiduciary relationship may not be predicated on such an arrangement."); *Cook Biotech Inc. v. ACell, Inc.*, 2005 WL 1473892, at *7 (N.D. Ind. June 21, 2005) (same). *See also United States v. Bernstein*, 533 F.2d 775, 797 (2d Cir. 1976) (holding that there was a "business relationship" between FHA and a mortgagee, not a fiduciary relationship).

### D. The Complaint Fails To State Claims For Gross Negligence and Negligence.

To prevail on any negligence claim, plaintiff must prove defendant "proximately caused her injury." *Megenity v. Dunn*, 68 N.E.3d 1080, 1083 (Ind. 2017). This means that Relator must

---

[9] Furthermore, in light of this extensive review and oversight over Carrington as a Direct Endorsement Lender, Carrington enjoyed no "position of advantage or superiority" over HUD.

allege that there is a "causal connection" between the actual loss and the negligent conduct. *Peters v. Forster*, 804 N.E.2d 736, 739 (Ind. 2004). *See also Hassan v. Begley*, 836 N.E.2d 303, 308 (Ind. Ct. App. 2005) ("[A]n indirect causal connection between negligence and the injury is insufficient to establish proximate cause.") (internal quotation marks omitted). As discussed *supra* I-C-3, the Complaint does not attempt to plead that the default of any of the mortgage loans (and resulting claim for insurance coverage) is causally linked to a material violation of applicable HUD/FHA requirements. Nor does the Complaint connect any specific mortgage loan default with the alleged inadequacies in Carrington's quality control procedures or self-reporting practices.

In any event, even if the alleged damages were caused by Carrington's negligent conduct, Relator's negligence claim is barred by Indiana's economic loss doctrine. "[T]he resolution of liability for purely economic loss caused by negligence is more appropriately determined by commercial rather than tort law … [A] defendant is not liable under a tort theory for any purely economic loss caused by its negligence." *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 729 (Ind. 2010). The only loss that Relator alleges with respect to the tort claims is purely economic: payments made by HUD on insurance claims. Compl. ¶¶ 61, 67, 72. As such, the Complaint fails to state a claim for negligence.

## CONCLUSION

For all of the foregoing reasons, Carrington respectfully requests that the Complaint be dismissed with prejudice.

Dated: April 24, 2017        By: */s/Jeanine Kerridge*

       Jeanine Kerridge
       BARNES & THORNBURG LLP
       11 South Meridian Street
       Indianapolis, Indiana 46204
       Telephone: (317) 231-7236

Facsimile:  (317) 231-7433
E-mail:  Jeanine.Kerridge@btlaw.com


Henninger S.  Bullock, *pro hac vice*
Allison J.  Zolot, *pro hac vice*
Niketa K.  Patel, *pro hac vice*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 849-5528
Email:  hbullock@mayerbrown.com

*Attorneys for Defendant
Carrington Mortgage Services LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 24th day of April, 2017, a copy of the foregoing was filed electronically using the CM/ECF system and is available to all counsel of record using same.

*/s/ Jeanine Kerridge*       
Jeanine Kerridge
