UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. MICHELLE CALDERON,<br><br>Plaintiffs,<br><br>v.<br><br>CARRINGTON MORTGAGE SERVICES, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | NO. 1:16-cv-00920-RLY-MJD |

**CARRINGTON MORTGAGE SERVICES, LLC'S BRIEF IN SUPPORT OF ITS MOTION TO STAY DISCOVERY**

Defendant Carrington Mortgage Services, LLC ("Carrington") respectfully requests a stay of discovery in this matter pending the Court's disposition of Carrington's anticipated Motion to Dismiss the Second Amended Complaint (the "Motion to Dismiss"). As Carrington's Motion to Dismiss will demonstrate, Relator's claims should be dismissed once again pursuant to Rule 12(b)(6) and Rule 9(b). Pending resolution of that Motion, Relator should not be permitted to use the discovery process as a means of obtaining evidence that may help her comply with Rule 9(b)'s heightened pleading standard. Nor should Relator be permitted to proceed with expansive discovery that will impose an undue burden on Carrington before the sufficiency of her current allegations is confirmed. Because good cause exists, the Court should stay discovery until the Motion to Dismiss is decided.

## I. BACKGROUND

Relator commenced this action by filing her initial complaint under seal on April 25, 2016 (Dkt. 1). Relator's initial complaint alleged that Carrington violated the False Claims Act

("FCA"), 31 U.S.C. § 3729 *et seq*., by (1) originating Federal Housing Administration ("FHA") insured loans that Carrington knew were ineligible for insurance under the FHA's Direct Endorsement Lender program and then (2) presenting claims for insurance payments to the Department of Housing and Urban Development ("HUD") when the loans defaulted. Compl. ¶ 6. In particular, Relator alleged that Carrington employees used false underlying data in support of loan applications to determine the basis upon which HUD's automated underwriting system would allow for a loan to be insured under the Direct Endorsement Program. *Id.* ¶ 39.

On February 1, 2017, after the United States declined to intervene in this matter (Dkt. 10), the Court unsealed the Complaint and ordered Relator to serve it on Carrington (Dkt. 11). Relator served the Complaint on February 28, 2017, and on April 24, 2017 Carrington moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). *See, e.g.*, Dkt. 26 at 8-13.

On June 7, 2017, Relator filed an Amended Complaint (Dkt. 40). Although this amended pleading contained some additional detail, Carrington again moved to dismiss pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) because Relator failed to allege the required facts with particularity. Among other things, Relator's Amended Complaint failed to allege Carrington made claims to the government on any of the allegedly noncomplaint loans used in her complaint. *See, e.g.*, Dkt. 49 at 8-16.

On January 10, 2018, the Court granted Carrington's motion to dismiss all of Relator's claims, and gave her twenty-one days to amend her pleading. Order on Def.'s Mot. to Dismiss, Dkt. 75. The Court agreed with Carrington that the Amended Complaint failed to state an FCA claim because Relator "never connects a single loan to a specific fraudulent underwriting practice performed by a specific individual" and never "connect[s] an FHA-insured mortgage obtained through a fraudulent practice to a claim for payment on a defaulted loan made by

Carrington." *Id.* at 12-13. Citing these deficiencies, among others, the Court found that Relator "failed to allege the elements of falsity, scienter, or materiality to support her FCA claims." *Id.* at 11.

On January 31, 2018, Relator filed her Second Amended Complaint (Dkt. 79), which remains identical to her prior pleadings, except for the addition of certain information taken from discovery materials produced to her by Carrington. *See* Second Am. Compl. ("SAC") ¶ 6. Carrington expects to file its Motion to Dismiss on or before March 2, 2018.

The parties have engaged in discovery since May 2017. On June 21, 2017 Relator served Carrington with her First Requests for Production of Documents, and on November 3, 2017, Relator served her Second Requests for Production of Documents. Decl.[1] ¶ 6. Thus far, Carrington has produced 106,451 pages in response to these document requests. *Id.* ¶ 7. The documents produced include loan underwriting files, servicing histories, payment histories, claims information, personnel files for current and former Carrington employees, and Carrington's policies and procedures. *Id.* ¶ 8. Carrington's productions to Relator's document requests are ongoing. *Id.* ¶ 9.

Pursuant to the Court's January 3, 2018 minute entry (Dkt. 73), all discovery is set to be completed by August 10, 2018, just thirteen months after Carrington was served with process in this matter.

## II. ARGUMENT

### A. The Court Has the Power to Stay Discovery Pursuant to Rule 26(c).

"A court may stay discovery through an exercise of its inherent authority to manage litigation or through its authority under Federal Rule of Civil Procedure 26(c)." *U.S. ex rel.*

---

1 "Decl." refers to the accompanying Declaration of Tracey A. McShane filed in support of Carrington's Motion to Stay Discovery.

*Robinson v. Indiana Univ. Health Inc.*, 2015 WL 3961221, at *1 (S.D. Ind. 2015) (Dinsmore, Mag.) (citations omitted); *see also Packman v. Chi. Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001) ("District courts have broad discretion in discovery matters.") (citing *Kalis v. Colgate–Palmolive Co.*, 231 F.3d 1049, 1056 (7th Cir. 2000)); *accord Duneland Dialysis LLC v. Anthem Ins. Cos., Inc.*, 2010 WL 1418392, at *2 (N.D. Ind. 2010). Indeed, the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (citation omitted).

The party seeking a stay "bears the burden of proof" to show that good cause exists. *Robinson*, 2015 WL 3961221, at *1 (citing *Cloverleaf Golf Course, Inc. v. FMC Corp.*, 2011 WL 2838178, at *2 (S.D. Ill. 2011)); *see also* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."). When determining whether good cause exists, the court will consider "factors such as whether the stay will prejudice the non-movant; whether the stay will simplify the issues in the case; and whether the stay will reduce the burden of litigation for the parties or the court." *Robinson*, 2015 WL 3961221, at *1 (citing *E.E.O.C. v. Fair Oaks Dairy Farms, LLC*, 2012 WL 3138108, at *2 (N.D. Ind. 2012)).

Courts in the Seventh Circuit have exercised the discretion to stay discovery upon a motion to dismiss with "substantial frequency." *Sanders v. City of Indianapolis*, 2010 WL 1410587, at *1 (S.D. Ind. 2010) ("Although not mandatory, courts often stay discovery while a motion to dismiss the complaint is pleading."); *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005) ("Numerous cases in [the Seventh Circuit] have allowed stays in the face of a Rule 12(b)(6) challenge."); *see also Nexstar Broad., Inc. v. Granite Broad. Corp.*,

2011 WL 4345432, at *2 (N.D. Ind. 2011) ("A stay is appropriate where the motion to dismiss can resolve the case, where ongoing discovery is unlikely to produce facts necessary to defeat the motion, or where the motion raises a potentially dispositive threshold issue"). Granting a stay upon a motion to dismiss is an "eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (citations omitted). Indeed, after the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts issue such stays "with even greater frequency" to "spare defendants the costs of discovery into meritless claims." *Dillinger, L.L.C. v. Elec. Arts, Inc.*, 2010 WL 1945739, at *1 (S.D. Ind. 2010) (granting motion to stay discovery pending motion to dismiss).

**B. Good Cause Exists For a Stay.**

**1. A Stay is Warranted Given the Purposes of Rule 9(b) and the FCA.**

**a. The purpose of Rule 9(b)**

The FCA was enacted to encourage people "with knowledge of undisclosed fraud" to report such fraud. *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 n.17 (11th Cir. 2002). This knowledge must be "direct and independent" and a whistleblower "must have voluntarily provided the information to the Government before instituting a suit." *U.S. ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 497 (7th Cir. 2003) (citations and quotations omitted). The Act imposes liability upon anyone who "knowingly presents, or causes to be presented," to the government, "a false or fraudulent claim for payment or approval," or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (B). To establish civil liability under the FCA, a relator must state with sufficient particularity "(1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and

(3) that the defendant knew the statement was false." *United States ex rel. Yannacopoulos v. Gen. Dynamics, Inc.*, 652 F.3d 818, 822 (7th Cir. 2011); *see also United States ex. rel. Morison v. Res-Care, Inc.*, 2017 WL 468287, at *2 (S.D. Ind. 2017) (Young, J.) (same).

For her claim to proceed a plaintiff must also meet the heightened pleading standards of Rule 9(b), and "identify <u>specific</u> false claims for payment or <u>specific</u> false statements made in order to obtain payment[.]" *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003) (emphases in original). When "a false statement is alleged," Relator must "connect that statement to a specific claim for payment and state who made the statement to whom and when[.]" *Id.* And when the alleged false claims are part of a larger fraudulent scheme involving numerous transactions, Relator must at least provide the particular facts of "representative examples." *United States ex rel. Graziosi v. Accretive Health, Inc.*, 2017 WL 1079190, at *6 (N.D. Ill. 2017) (citations omitted). Critical to this point, these details must be provided at the outset of the case: A relator cannot file suit and hope to "learn the complaint's bare essentials through discovery." *Clausen*, 290 F.3d at 1313 n.24.

Rule 9(b)'s heightened pleading requirements "protect a defendant's reputation from harm." *Robinson*, 2015 WL 3961221, at *2 (citation omitted); *United States ex rel. Fowler v. Caremark Rx, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007) (same), *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009). That protection is particularly important in FCA cases like this, both because of the high bounty offered to successful relators and because relators are frequently former employees who have an axe to grind against their ex-employers. *See Clausen*, 290 F.3d at 1313 n.24 (recognizing that relators positioned to receive a "windfall" who fail to plead with specificity "needlessly harm a

defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements.").

As such, Rule 9(b) was designed to prevent a plaintiff with no real information about fraud from filing suit with the hope that he or she can use the discovery process to uncover previously unknown wrongs. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994) (noting that one of the main purposes of Rule 9(b) is to minimize "strike suits" and "fishing expeditions"). And courts have consistently recognized that "[t]he particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim." *Robinson*, 2015 WL 3961221, at *2 (quoting *United States ex rel Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006)). *See United States v. Supervalu, Inc.*, 2016 WL 3906570 (C.D. Ill. 2016) (holding that a "stay will support the policies underlying the particularity requirements of Federal Rule of Civil Procedure 9(b)," where the court had yet to determine if relator had "alleged violations of the False Claims Act with sufficient particularity.").

**b. Relator should not be allowed to circumvent Rule 9(b)**

Given the protections afforded by Rule 9(b)'s heightened pleading requirements, a discovery stay is particularly appropriate where, like here, an anticipated motion to dismiss will challenge the relator's FCA allegations based upon Rule 9(b). It is even more appropriate where, like here, the relator's allegations have already been dismissed once for failure to comply with Rule 9(b) and an amended pleading only adds information from discovery materials. *See, e.g.*, *Avnet, Inc. v. American Motorists Insurance Co.*, 115 F.R.D. 588, 592 (S.D.N.Y. 1987) (noting that good cause to stay discovery exists when plaintiff fails to plead fraud with particularity).

In its January 10, 2018 Order, the Court dismissed Relator's FCA claim for failure to allege three necessary elements—falsity, scienter, and materiality. Specifically the Court stated:

> **Falsity**: "Calderon has failed to make the link between the allegedly fraudulent underwriting practice to a specific person or a specific mortgage, nor did she allege facts that create an inference that at least one of the 27,000 claims she found more likely than not links back to a falsely-certified loan." Order on Def.'s Mot. to Dismiss, Dkt. 75 at 13.
>
> **Scienter**: "The court agrees with Carrington that the allegations in the Amended Complaint with respect to what Carrington knew or should have known are too vague to satisfy the relaxed scienter requirement . . . She never provides a connection between any one defect that made any loan with that defect universally unacceptable and the default of that loan such that Carrington would seek payment under the relevant insurance contract." *Id.* at 15.
>
> **Materiality**: "There is no attempt to address or provide facts from which an inference can be drawn that the 'at least one' unidentified violation was actually material to any decision made by HUD, much less a decision to pay Carrington . . . she must at least try to make a connection between the allegedly fraudulent underwriting decisions and HUD's subsequent payment of funds to Carrington." *Id.* at 18.

As these statements demonstrate, whatever independent knowledge Relator has of the alleged fraud, it was not sufficient to support a viable FCA claim.[2]

Despite these glaring deficiencies in Relator's Amended Complaint, Carrington continued to respond, in good faith, to Relator's discovery requests. Not surprisingly, given Relator's lack of knowledge of any specific false claims that were presented to the government, her discovery requests seek to uncover the details needed to support her FCA suit by seeking among other things:

- All files for loan applications that were assigned more than one loan number;
- All files for loan applications that were denied and reviewed by more than one underwriter;
- All files for loans that have been in default for 30 days or longer;
- All files for loans on which there has been a foreclosure;
- All files for loans on which there has been a claim made to the U.S. Government;
- All documents evidencing loan denials;

[2] In her response to Carrington's Motion to Dismiss the Amended Complaint, Relator fully conceded that she has *no independent knowledge* of any actual fraudulent claims being submitted to the government. *See* Opp. (Dkt. 53) at 2.

- Full employee files for all underwriters;
- All emails between employees of Carrington regarding loan approval procedures, requirements, incentives, and goals.

Over the last nine months, Carrington has spent considerable time, money, and resources searching for and producing voluminous underwriting files, servicing histories, payment histories, claims information, personnel files, and policies and procedures responsive to the above requests.

Carrington did so even though the Court has since held that Relator failed to allege an actionable claim that Carrington violated the FCA. Meanwhile, Relator now impermissibly seeks to use this discovery material to bolster her allegations in the recently-filed Second Amended Complaint. Notably Relator makes no effort to allege any additional detail independently known by her from her time at Carrington. Instead, Relator has simply copied and paraphrased loan and claim information. *See* SAC ¶ 6. This parroting of discovery material in her Second Amended Complaint is exactly the type of "defamatory and extortionate" behavior from a plaintiff who has not conducted the proper "precomplaint investigation" that is prohibited by Rule 9(b). *Ackerman v. Northwestern Mutual Life Insurance Co.*, 172 F.3d 467, 469-70 (7th Cir. 1999). Stated another way: "[m]aterial learned through discovery . . . cannot cure an FCA complaint's failure to satisfy Rule 9(b)." *See United States ex rel. Bingham v. HCA, Inc.*, 2016 WL 6027115, at *5 n.6 (S.D. Fla. 2016).[3]

---

[3] *See also Webb v. Everhome Mortg.*, 704 F. App'x 327, 330 (5th Cir. 2017) (upholding dismissal under Rule 9(b) where plaintiff sought to determine missing details of insufficient fraud claim through discovery); *United States ex rel Stinson, Lyons, Gerlin & Bustamante, P.A., v. Blue Cross Blue Shield of Georgia*, 755 F.Supp. 1040, 1052 (S.D. Ga 1990) (prohibiting relator from engaging in discovery to comply with heightened pleading obligations and noting that the "[t]he clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed.") (citation and quotation marks omitted); *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 380 (4th Cir. 2008) ("[I]f allowed to go forward, Relators' FCA claim would have to rest primarily on facts learned through the costly process of discovery. This is precisely what Rule 9(b) seeks to prevent."); *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 559 (8th Cir. 2006) (rejecting plaintiff's request to permit discovery to satisfy Rule 9(b)); *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004) ("[C]ourts have repeatedly refused to allow qui tam relators to rely on later

Relator should not be permitted to cash in on her "ticket to the discovery process" any longer, at least not without any evidence that she has the ability to independently identify a single false claim presented to the government. Under similar circumstances, courts in this Circuit have stayed discovery pending a ruling on a Rule 9(b) motion. *See, e.g.*, Entry on Motion to Stay, *United States ex rel. Lusby v. Rolls-Royce Corp.*, 2007 WL 4557773, (S.D. Ind. 2007) (No. 1:03-cv-00680) (granting motion to stay where Relator had failed to plead falsity with particularity); *United States ex rel. Liotine v. CDW-Gov't, Inc.*, 2009 WL 720958, at *2 (S.D. Ill. 2009) (granting motion to stay discovery pending ruling on Rule 9(b) motion because "the purpose of [Rule 9(b)] is frustrated by allowing a relator . . . to engage in discovery in the hope of uncovering enough specifics to adequately plead a case."); *Glaser*, 2007 WL 2934885, at *1 (S.D. Ind. 2007) (holding that, "in light of the unique nature of claims under the False Claims Act, it is particularly appropriate to postpone such extensive discovery until after the Court has determined that the Relator has the authority to bring the asserted claims.").[4]

**2. A Stay is Warranted Given Relator's Broad and Burdensome Document Requests.**

A stay of discovery is also warranted because the potential for waste of time, resources, and money is particularly severe in view of Relator's expansive document requests. Relator's document requests are attached hereto as Exhibits 1 and 2. Among other things, those requests seek production of documents not relevant to this case such as files for loans on which no claim

discovery to comply with Rule 9(b)'s pleading requirements") (citations omitted); *Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989) ("[Plaintiff's] contention, that discovery will unearth information tending to prove his contention of fraud, is precisely what Rule 9(b) attempts to discourage.") (citation omitted); *Knudsen v. Sprint Commc'ns Co.*, 2016 WL 4548924, at *15 (N.D. Cal. 2016) ("[D]iscovery is an inappropriate avenue to cure . . . deficient pleadings); *United States ex rel. Polansky v. Pfizer, Inc.*, 2009 WL 1456582, at *10 (E.D.N.Y. 2009) (denying plaintiff's request for discovery to learn details necessary to satisfy Rule 9(b)).

[4] This Court's ruling against a stay of discovery in *Robinson* is distinguishable. In that case relator "set forth an extensive factual background that lends support to her allegations." *Robinson*, 2015 WL 3961221, at *3. Here, by contrast, the Court has already recognized that Relator's pleadings have been glaringly deficient and lacking in any detail that would be sufficient to meet the pleading standards of Rule 9(b). *See supra* at 8. In other words, Relator has not done "enough to assure the Court that she is not engaged in [a fishing] expedition." *Robinson*, 2015 WL 3961221, at *3.

was presented to the government. Decl. ¶ 11. Similarly, Relator requests "full employee files" for "all underwriters" even though many of those underwriters had no connection to those loans on which claims were made. Ex. 1, Request No. 12; Decl. ¶¶ 14-15.

The underwriting files and documents requested are voluminous, and the time needed to search for, review, and produce these documents is significant. *Id.* ¶ 12. For example, each underwriting file consists of various documents, such as a credit package, underwriter submissions, and transmittal summaries, which have to be collected from different sources. *Id.* Gathering the underwriting files, the servicing histories, the payment histories, and the claims information documents takes over one hour and a half for each loan (*id.* ¶ 12), and there are over 15,000 FHA loans that were endorsed by Carrington during the relevant time period (*id.* ¶ 13). Carrington must then expend additional resources and money to allow its outside counsel to review these underwriting files and documents – which are often well over 1,000 pages in length per loan – and produce them to Relator. *Id.* ¶ 12. The need for such discovery – let alone such costly and unwieldy discovery – will be obviated if the Court grants the anticipated motion to dismiss. *See Panther Brands, LLC v. Indy Racing League, LLC*, 2014 WL 11411864, at *1 (S.D. Ind. 2014) (granting defendants' motion to stay discovery pending resolution of a motion to dismiss where further discovery was shown to be "voluminous and costly").

**3. Additional Factors Weigh Against Any Finding That Relator Will Suffer Prejudice As a Result of a Stay.**

The only possible prejudice to Relator from a stay is that Relator will have to wait a short period—the pendency of the Motion to Dismiss—to receive further discovery.[5] But that

[5] The trial date is currently set for June 2019. Dkt. 73. Carrington notes that the Court expressed concern at the February 16, 2018 Status Conference that further delay in the case would cause the matter to be ripe for trial over three years from the start of the case. However, Carrington was not served with the complaint until March 2017. Dkt. 12. As such, the current trial date is just a little more than two years from when Carrington first learned of, and had the ability to respond to, Relator's allegations.

prejudice is small. Relator, herself, has suffered no injury, and there is no reason to believe that any discoverable material will be lost.

By contrast, should the Court grant the Motion to Dismiss, Carrington "stands to be significantly prejudiced if discovery proceeds, because it will be required to produce voluminous [] information to defend against claims that never should have been brought in the first place." Entry on Motion to Stay, *Lusby*, 2007 WL 4557773, at * 2 (No. 1:03-cv-00680). Further, any potential prejudice to Relator is further outweighed by the interest of judicial economy: It would be highly inefficient for the parties—and the Court—to address discovery disputes that may well be rendered moot by the Court's disposition of the anticipated motion to dismiss.

## III. RELATOR'S POSITION

On February 8, 2018, Carrington contacted Relator's counsel, Jennifer Blackwell, via phone concerning this motion to stay discovery. Relator's counsel did not consent to Defendant's request. Carrington confirmed Relator's counsel's position on this issue on February 16, 2018.

## IV. CONCLUSION

Defendant Carrington Mortgage Services, LLC respectfully requests that the Court stay any discovery in this matter pending the Court's ruling on Defendant's anticipated Motion to Dismiss and grant all other relief it deems just and proper. A proposed Order is attached for the Court's consideration.

Dated: February 20, 2018

Respectfully submitted,

/s/ *Jeanine Kerridge*
Jeanine Kerridge
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 231-6480
Facsimile: (317) 231-7433
E-mail: jeanine.kerridge@btlaw.com

Henninger S. Bullock, *pro hac vice*
Allison J. Zolot, *pro hac vice*
Niketa K. Patel, *pro hac vice*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 849-5528
Email: hbullock@mayerbrown.com

*Attorneys for Defendant*
*Carrington Mortgage Services LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 20th day of February, 2018, a copy of the foregoing was filed electronically using the CM/ECF system and is available to all counsel of record using same.

*/s/ Jeanine Kerridge*
Jeanine Kerridge