UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. MICHELLE CALDERON, <br><br> Plaintiff, <br><br> v. <br><br> CARRINGTON MORTGAGE SERVICES, LLC, <br><br> Defendant. | Case No.  1:16-cv-00920-RLY-MJD |

**CARRINGTON MORTGAGE SERVICES, LLC'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 3

I.     **DIRECT ENDORSEMENT PROGRAM**.......................................................... 3

    A.     Carrington's Role as a Direct Endorsement Lender. ............................... 3

    B.     Underwriting of FHA-insured Loans. ....................................................... 4

    C.     Refinancing of FHA-insured Loans. ......................................................... 5

    D.     Claims Submission Process for FHA-insured Loans. ............................... 5

    E.     HUD's Monitoring and Review of FHA-insured Loans............................ 6

II.     **PURPOSE OF THE FCA**............................................................................... 7

III.     **PROCEDURAL HISTORY** ............................................................................. 7

LEGAL STANDARD................................................................................................. 9

ARGUMENT .......................................................................................................... 11

I.     **THE SECOND AMENDED COMPLAINT IMPERMISSIBLY USES DISCOVERY MATERIAL TO ALLEGE A CLAIM UNDER THE FCA**............. 11

    A.     The Policies Behind Rule 9(b) and the FCA's Heightened Pleading Requirements Require Relator to Allege Independent Knowledge of Fraud. ...................................................................................................... 11

    B.     The Court Should Disregard All Allegations Based on Facts Learned Through Discovery. ................................................................................ 14

II.     **THE SECOND AMENDED COMPLAINT FAILS TO ALLEGE A CLAIM UNDER THE FCA**....................................................................................... 18

    A.     The Second Amended Complaint Fails to Allege Falsity................................ 18

        1.     Allegations Regarding False Certifications. ............................................. 20

        2.     Allegations Regarding Data Manipulation. ............................................. 23

        3.     Allegations Regarding Self Reporting Violations. ................................... 24

        4.     Allegations Regarding Delay In Submission of Loans to FHA............... 25

    B.     The Second Amended Complaint Fails to Allege Scienter ................................ 26

    C.     The Second Amended Complaint Fails to Allege Materiality............................ 29

III.     **THE COURT SHOULD DISMISS THE SECOND AMENDED COMPLAINT WITH PREJUDICE.** ......................................................................... 32

CONCLUSION........................................................................................................ 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Nw. Mut. Life Ins. Co.*,
  172 F.3d 467 (7th Cir. 1999) ...................................................................12, 14, 16, 18

*United States ex rel. Aflatooni v. Kitsap Physicians Serv.*,
  314 F.3d 995 (9th Cir. 2002) .................................................................................10

*Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*,
  499 F.3d 663 (7th Cir. 2007) .............................................................................32, 34

*Allison Engine Co. v. United States ex rel. Sanders*,
  553 U.S. 662 (2008)..............................................................................................29

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................9

*Atkins v. City of Chicago*,
  631 F.3d 823 (7th Cir. 2011) .................................................................................33

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................9, 21

*Bellevue v. Universal Health Servs. of Hartgrove, Inc.*,
  867 F.3d 712 (7th Cir. 2017) .................................................................................12

*United States ex rel. Bingham v. HCA, Inc.*,
  2016 WL 344887 (S.D. Fla. Jan. 28, 2016) ...........................................................17

*United States ex rel. Bingham v. HCA, Inc.*,
  2016 WL 6027115 (S.D. Fla. Oct. 14, 2016).......................................................14, 17

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) .................................................................................19

*City of Chicago v. Purdue Pharma L.P.*,
  211 F. Supp. 3d 1058 (N.D. Ill. 2016) ...................................................................30

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*,
  290 F.3d 1301 (11th Cir. 2002) .....................................................10, 11, 12, 13, 14

*United States ex rel. Conroy v. Select Med. Corp.*,
  2016 WL 5661566 (S.D. Ind. Sept. 30, 2016) (Young, J.).....................................10

**TABLE OF AUTHORITIES**
(continued)

Page

*United States ex rel. Crews v. NCS Healthcare of Ill., Inc.*,
    460 F.3d 853 (7th Cir. 2006) .................................................................10, 19, 25

*In re Discovery Zone Sec. Litig.*,
    943 F. Supp. 924 (N.D. Ill. 1996) ......................................................................14

*Doe v. Houchens Indus., Inc.*,
    2015 WL 133706 (S.D. Ind. Jan. 9, 2015) (Young, J.)......................................26

*United States ex rel. Durcholz v. FKW Inc.*,
    189 F.3d 542 (7th Cir. 1999) .............................................................................31

*United States ex rel. Feingold v. AdminaStar Fed., Inc.*,
    324 F.3d 492 (7th Cir. 2003) .......................................................................10, 11

*United States ex rel. Fowler v. Caremark RX, Inc.*,
    2006 WL 3469537 (N.D. Ill. Nov. 30, 2006) ...................................................19

*United States ex rel. Garst v. Lockheed-Martin Corp.*,
    328 F.3d 374 (7th Cir. 2003) ...........................................................9, 10, 11, 24, 34

*Gelco Corp. v. Duval Motor Co.*,
    2002 WL 31875537 (N.D. Ill. Dec. 26, 2002) ..................................................11

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*,
    128 F.3d 1074 (7th Cir. 1997) .....................................................................32, 34

*Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
    559 U.S. 280 (2010)...........................................................................................12

*United States ex rel. Graziosi v. Accretive Health, Inc.*,
    2017 WL 1079190 (N.D. Ill. Mar. 22, 2017)....................................................10

*United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*,
    772 F.3d 1102 (7th Cir. 2014) ...........................................................................14

*United States ex rel. Gross v. AIDS Research Alliance Chicago*,
    415 F.3d 601 (7th Cir. 2005) .........................................................................9, 31

*United States ex rel. Hanna v. City of Chicago*,
    834 F.3d 775 (7th Cir. 2016) ................................................................9, 10, 16, 19, 21

*Hindo v. Univ. of Health Scis./Chicago Med. Sch.*,
    65 F.3d 608 (7th Cir. 1995) ...............................................................................26

*Hirata Corp. v. J.B. Oxford & Co.*,
    193 F.R.D. 589 (S.D. Ind. 2000)........................................................................12

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Jepson, Inc. v. Makita Corp.*,
   34 F.3d 1321 (7th Cir. 1994) ...................................................................12

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.*,
   441 F.3d 552 (8th Cir. 2006) ...................................................................13

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
   360 F.3d 220 (1st Cir. 2004) ...................................................................13

*Knudsen v. Sprint Commc'ns Co.*,
   2016 WL 4548924 (N.D. Cal. Sept. 1, 2016) ................................... 13-14

*United States ex rel. Lee v. N. Adult Daily Health Care Ctr.*,
   2016 WL 4703653 (E.D.N.Y. Sept. 7, 2016) ..........................................30

*United States ex rel. Liotine v. CDW-Gov't, Inc.*,
   2009 WL 720958 (S.D. Ill. Mar. 18, 2009) ............................................13

*United States ex rel. Lisitza v. Par Pharm. Cos.*,
   2013 WL 870623 (N.D. Ill. Mar. 7, 2013) ...............................................33

*Luckey v. Baxter Healthcare Corp.*,
   183 F.3d 730 (7th Cir. 1999) ...................................................................21

*United States ex rel. Lusby v. Rolls-Royce Corp.*,
   2007 WL 4557773 (S.D. Ind. Dec. 20, 2007) .........................................13

*United States ex rel. Lusby v. Rolls–Royce Corp.*,
   570 F.3d 849 (7th Cir. 2009) ...................................................................19

*Madonna v. United States*,
   878 F.2d 62 (2d Cir. 1989) ......................................................................13

*United States ex rel. Main v. Oakland City Univ.*,
   426 F.3d 914 (7th Cir. 2005) ...................................................................28

*United States ex. rel. Morison v. Res-Care, Inc.*,
   2017 WL 468287 (S.D. Ind. Feb. 3, 2017) (Young, J.) ..........................11

*United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*,
   865 F.3d 29 (1st Cir. 2017) .....................................................................13

*United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*,
   707 F.3d 451 (4th Cir. 2013) ...................................................................12

*Park v. City of Chicago*,
   297 F.3d 606 (7th Cir. 2002) ...................................................................32

**TABLE OF AUTHORITIES**
(continued)

Page

*United States ex rel. Polansky v. Pfizer, Inc.,*
   2009 WL 1456582 (E.D.N.Y. May 22, 2009) ....................................................14

*United States ex rel. Presser v. Acacia Mental Health Clinic, LLC,*
   836 F.3d 770 (7th Cir. 2016) ....................................................22, 24, 30

*United States ex rel. Rockey v. Ear Inst. of Chicago, LLC,*
   92 F. Supp. 3d 804 (N.D. Ill. 2015) ....................................................28, 29

*S.E.C. v. Benger,*
   697 F. Supp. 2d 932 (N.D. Ill. 2010) ....................................................11

*United States ex rel. Scharff v. Camelot Counseling,*
   2016 WL 5416494 (S.D.N.Y. Sept. 28, 2016) ....................................................30

*United States ex rel. Schutte v. Supervalu, Inc.,*
   2016 WL 3906570 (C.D. Ill. July 14, 2016) ....................................................15

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.,*
   532 F.3d 496 (6th Cir. 2008) ....................................................12

*United States ex rel. Soulias v. Nw. Univ.,*
   2013 WL 3275839 (N.D. Ill. June 27, 2013) ....................................................25

*Stanard v. Nygren,*
   658 F.3d 792 (7th Cir. 2011) ....................................................34

*United States ex rel Stinson, Lyons, Gerlin & Bustamante, P.A., v. Blue Cross Blue Shield of Ga.,*
   755 F.Supp. 1040 (S.D. Ga 1990) ....................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2007) ....................................................5

*United States ex rel. Underwood v. Genentech, Inc.,*
   720 F. Supp. 2d 671 (E.D. Pa. 2010) ....................................................13

*United States v. Ortho-McNeil Pharm., Inc.,*
   2007 WL 2091185 (N.D. Ill. July 20, 2007) ....................................................13

*United States v. Sanford-Brown, Ltd.,*
   840 F.3d 445 (7th Cir. 2016) ....................................................30

*Universal Health Servs., Inc. v. United States,*
   136 S. Ct. 1989 (2016) ....................................................26, 29, 30, 31

## TABLE OF AUTHORITIES
(continued)

**Page**

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
    20 F.3d 771 (7th Cir. 1994) .............................................................................12

*Webb v. Everhome Mortg.*,
    704 F. App'x 327 (5th Cir. 2017) ...................................................................13

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) .........................................................................13

*Wright v. Associated Ins. Cos*,
    29 F.3d 1244 (7th Cir. 1994) ...........................................................................5

*United States ex rel. Yannacopoulos v. Gen. Dynamics, Inc.*,
    652 F.3d 818 (7th Cir. 2011) .......................................................11, 26, 28, 31


**Statutes**

31 U.S.C. § 3729......................................................................................................11, 26

31 U.S.C. § 3730............................................................................................................7


**Other Authorities**

24 C.F.R. § 203.5.........................................................................................................29

5B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1357
    (3d ed. 2004 & Supp. 2007).........................................................................5

Fed. R. Civ. P. 15.........................................................................................................32

H.R. Rep. No. 99-660 (1986)......................................................................................26

Defendant Carrington Mortgage Services, LLC ("Carrington") respectfully submits this memorandum of law in support of its motion to dismiss the Second Amended Complaint (Dkt. 79) pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

## INTRODUCTION

This is relator, Michelle Calderon's ("Relator's"), third attempt at pleading a violation of the False Claims Act ("FCA"). And this effort fares no better than her first or second. Rather than cure the deficiencies identified in the Court's Order on Defendant's Motion to Dismiss the Amended Complaint (Dkt. 75) (the "Order"), Relator regurgitates information that Carrington has produced in discovery – information of which Relator had no personal knowledge prior to filing this case. But her parroting of discovery material does not meet the heightened pleading standards required for fraud claims of this type. Nor does it reveal any independent and direct knowledge of fraud that is required when asserting claims under the FCA.

As the Court knows, Carrington participates in the Federal Housing Administration ("FHA") program as a Direct Endorsement Lender, originating, underwriting, and closing FHA-insured mortgage loans. In her Amended Complaint (Dkt. 40), Relator alleged that, from 2013 to 2015, Carrington engaged in a fraudulent practice of underwriting and closing, and then seeking coverage for, FHA loans that it knew were ineligible for insurance. In doing so, Relator provided six sample loans that were allegedly ineligible for insurance, but she failed to allege that these loans were the subject of claims for payment to the federal government. In its Order, the Court held that this failure, and the failure to plead the required elements of falsity, materiality, and scienter with particularity, warranted dismissal of Relator's FCA claims.

Nevertheless, the Court gave Relator leave to replead. But the Second Amended Complaint ("SAC") simply quotes from documents Relator obtained from Carrington during prior discovery in this action. As such, the SAC is no improvement on its predecessor: as

explained in detail below, Relator's FCA claim still fails as a matter of law and should be dismissed – this time with prejudice.

As a threshold matter, the SAC's new allegations – all of which come from discovery produced by Carrington – should be disregarded. Rule 9(b)'s heightened pleading requirement aims to minimize fishing expeditions and strike suits, brought by plaintiffs, such as Relator, who seek to uncover the missing details of an insufficient fraud claim through discovery. Well-settled caselaw requires that a relator base her allegations on independent and direct knowledge of fraud and not skirt a proper precomplaint investigation by using discovery materials produced by a defendant. But Relator has done just that. Instead of giving the Court new allegations that rest on her independent knowledge of fraudulent conduct, the SAC contains nothing more than Relator's after-the-fact interpretation of loan files produced by Carrington. Such a practice eviscerates the very purpose of Rule 9(b), and once the purported facts taken from discovery material are disregarded, the SAC is no different from its deficient predecessor.

Even with the information gleaned from discovery, the SAC's allegations fall woefully short of Rule 9(b)'s particularity requirement and fail to plead violations of the FCA. For example, although the SAC now points to four loans that actually defaulted and were the subject of claims made on the government, there is no allegation that these loans did not properly qualify for HUD insurance or that any purported representation made by Carrington was material to HUD's decision to make payment on a resulting claim. Absent such facts, Relator cannot satisfy Rule 9(b)'s heightened pleading standards and cannot state a viable claim for violation of the FCA.

Relator characterizes herself as a whistleblower. The reality is that she has not alleged any facts, from her independent knowledge, suggesting that a false claim was presented to the

Government. Under such circumstances, it is not surprising that, after having had an opportunity to review the documents and information provided by Relator, including the information alleged in each of the complaints, the Government has not intervened on behalf of the United States at any point in the twenty-three months since the case was initiated. Given Relator's inability to allege such facts, Carrington respectfully requests that this Court dismiss Relator's claims with prejudice.

## FACTUAL BACKGROUND

I.    DIRECT ENDORSEMENT PROGRAM

A.    Carrington's Role as a Direct Endorsement Lender.

Carrington is a residential mortgage lender and limited liability company organized and existing under the laws of Delaware, with its principal place of business in California. Second Am. Compl. ("SAC") ¶ 12. From March 2013 to March 2015 (the "Covered Period"), Relator worked as an underwriter in Carrington's Fishers, Indiana office. *Id.* ¶ 6, 11. The FHA, a part of the Department of Housing and Urban Development ("HUD") since 1934, is the largest insurer of residential mortgage loans in the world. *Id.* ¶ 13. Under the FHA Direct Endorsement Program, FHA-approved lenders with Direct Endorsement Authority ("Direct Endorsement Lenders") may underwrite mortgages for FHA insurance without prior HUD review. *Id.* ¶ 15.

During the Covered Period, Carrington served as a Direct Endorsement Lender and expanded the accessibility of homeownership, offering loans to underserved and creditworthy consumers who did not qualify for loans under conventional underwriting criteria. *Id.* ¶ 14. Because those loans met FHA's underwriting guidelines and program requirements, Carrington then submitted them to FHA for insurance coverage. *Id.* ¶¶ 15-16.

3

### B.    Underwriting of FHA-insured Loans.

To evaluate and ultimately extend loans, Carrington used FHA's underwriting software ("TOTAL") and its own HUD-approved automated underwriting system ("AUS"). *Id.* at ¶¶ 24-25. TOTAL is a credit-rating algorithm maintained by FHA that works in conjunction with a HUD-approved AUS. *Id.* ¶¶ 8, 25. When considering a loan application, Carrington entered various credit variables into the AUS, such as the borrower's monthly income, and TOTAL subsequently evaluated the borrower's overall credit and assigned an "accept/approve" rating or a "refer" rating. *Id.* Loans that received an "accept/approve" rating were subject to less stringent documentation requirements and underwriter scrutiny. *Id.* ¶¶ 8, 26. Loans that received a "refer" rating were manually underwritten by Carrington and required additional documentary support. *Id.* ¶ 26. Irrespective of whether a loan is characterized as "accept/approve" or "refer," once a loan closes, the only information transmitted to HUD is the final Finding Report, which is generated just prior to the endorsement of the loan. Ex. 1[1] (FHA Single Family Housing Policy Handbook 4000.1) at Section II.A.4.a. HUD will not receive any other information about the borrower that previously may have been entered into either an AUS or TOTAL. *Id.*

When manually underwriting loans, Carrington collected and evaluated a variety of information about the borrower's credit and the property that would secure the loan, assessed the importance and effect of the information on the risk the loan presented, applied underwriting standards, and made a judgment about whether the borrower represented an acceptable credit risk for HUD. SAC ¶¶ 15, 18, 20, 27. At the end of this process, Carrington provided a loan-specific

---

[1]    "Ex." refers to the exhibits attached to the accompanying Declaration of Niketa K. Patel ("Decl.") in support of Defendant's Motion to Dismiss the Second Amended Complaint for Failure to State a Claim, dated March 2, 2018.

certification that the data used by Carrington had "integrity" and that the loan was "eligible for HUD mortgage insurance." *Id.* ¶¶ 32, 37; *see also* Ex. 2 (09/2010 Form HUD-92900-A)[2] at 3.

### C.   Refinancing of FHA-insured Loans.

HUD also authorized Carrington to approve pre-existing FHA loans for refinancing. SAC ¶ 30. Refinancing was another avenue to expand homeownership opportunities by lowering the borrower's monthly principal and interest payments. *Id.* In approving loans for refinancing, Carrington employed the same underwriting practices discussed above and would "make all certifications required for th[e] mortgage as set forth in HUD Handbook 4000.4." *Id.* ¶ 33; *see also* Ex. 2 (09/2010 Form HUD-92900-A) at 3-4. For both originated loans and subsequent refinancings, Carrington conducted quality control reviews to ensure that there was no fraud on the part of the borrower. SAC ¶ 39.

### D.   Claims Submission Process for FHA-insured Loans.

In the event that a borrower defaulted on payments for a HUD-endorsed loan, the lender would follow stringent servicing and loss mitigation requirements. *See* Ex. 1 (FHA Single Family Housing Policy Handbook 4000.1) at Section III. If a foreclosure eventually ensued, Carrington had to follow the claim submission process outlined in the Handbook in order to submit a loan-specific claim to HUD for insurance benefits. *See id.* at Section IV-A-1-a. Carrington could submit these claims via the Electronic Data Interchange system, the FHA Connection system, or by paper. *Id.* at Section IV-A-1-a-vii. Typically, HUD would then pay the mortgage insurance claim presented on that particular loan, provided that the claim submission

---

[2]     09/2010 Form HUD-92900-A is incorporated by reference into the SAC. *See* SAC ¶¶ 32, 37. The Supreme Court has instructed that a court is not limited to the four corners of the complaint and may consider documents "incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004 & Supp. 2007)). *See also Wright v. Associated Ins. Cos*, 29 F.3d 1244, 1248 (7th Cir. 1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.").

"pass[ed] all system edits and control checks," and Carrington "provide[d] all required documentation." *See id.* at Section IV-A-3.

### E.   HUD's Monitoring and Review of FHA-insured Loans.

HUD has implemented mechanisms that allow it to monitor and review loans endorsed for insurance by Direct Endorsement Lenders. Specifically, approved Direct Endorsement Lenders are required to submit "case binders" that contain all loan origination documentation to HUD for a Post Endorsement Technical Review ("PETR"). Ex. 4 (HUD Handbook 4155.2, Chapter 9)[3] at Section 9.C.1.a. The need for PETR is founded on HUD's recognition that "underwriting decisions rely heavily on the subjective interpretation of the DE lender." *Id.* at 9.B.1.b. Thus, through PETR, HUD is able to evaluate the "risk that loans represent to FHA's insurance funds" and the "lender's compliance with FHA's [] underwriting requirements and [] documentation requirements." *Id.* at 9.B.1.a.

The minimum percentage of case binders selected for PETR is "5% of endorsed loans originated by each lender's home and branch offices," although local HUD field offices have wide discretion to set a higher percentage based upon factors they deem appropriate. *Id.* at Section 9.C.1.b. A reviewer conducting PETR will assign one of three ratings to the loan under review: "conforming," "deficient," or "unacceptable." *Id.* at Section 9.C.3.c. "Conforming" indicates that there are no documentation deficiencies in the loan file, "[t]he loan presents an acceptable level of risk," and "[t]he basic eligibility of the borrower and/or property for FHA mortgage insurance is not questioned." *Id.* at Section 9.C.2.b. "Deficiency" signifies that the reviewer identified documentation deficiencies or processing errors but the loan still "presents an acceptable level of risk." *Id.* "Unacceptable" represents that the "loan should not have been

---

[3]        HUD Handbook 4155.2 is incorporated by reference into the SAC. *See* SAC ¶ 19.

approved" or that "the file is missing key documents necessary to determine whether the underwriting was performed appropriately in compliance with FHA standards." *Id*. If a lender receives an "unacceptable" rating it must provide an adequate explanation of the deficiencies identified by the reviewer within 45 days. *Id*. at Section 9.C.4.a. Relator does not allege that Carrington failed to submit the required case binder or that, after PETR, Carrington received a "deficient" or "unacceptable" rating.

## II.  PURPOSE OF THE FCA

The purpose of the FCA is to encourage whistleblowers (known as "relators") to come forward early to expose (and stop) fraud on the government. Accordingly, the FCA gives relators a considerable incentive: they are entitled to up to 30% of whatever the government recovers. 31 U.S.C. § 3730(d)(2). The Relator in this case—Calderon—broadly alleges that Carrington certified loans that were not eligible for insurance or refinancing under the FHA guidelines, and asserts causes of action for violations of the FCA. The SAC makes these allegations without alleging independent knowledge on Relator's part that any specific loan defaulted or that Carrington subsequently presented a specific claim for insurance to HUD. Instead, Relator relies only on information produced by Carrington during discovery to make her claim.

## III.  PROCEDURAL HISTORY

As is customary in FCA cases, the original Complaint remained under seal while the Government evaluated the merits of the case and whether to intervene in the Lawsuit. After a review of the materials, the United States declined to intervene on January 27, 2017 (Dkt. 10). The Court thereafter unsealed the Complaint, and Relator served Carrington on or around March 3, 2017. Carrington filed its Motion to Dismiss the Complaint on April 24, 2017 (Dkt. 26). In response to that motion, Relator filed an Amended Complaint (Dkt. 40) on June 7, 2017. The Amended Complaint referenced several loans that Relator alleged did not satisfy HUD

requirements, *see, e.g.,* Am. Compl. ¶¶ 6-9, but Relator failed to allege that Carrington made

false (or for that matter any) claims on these loans. Carrington again moved to dismiss Relator's

claims on July 21, 2017 (Dkt. 48).

In its Order on the Motion to Dismiss (Dkt. 75), the Court held that Relator "failed to

allege the elements of falsity, scienter, or materiality to support her FCA claims." Order at 11.

Specifically, the Court stated:

> **Falsity**: "Calderon has failed to make the link between the allegedly fraudulent
> underwriting practice to a specific person or a specific mortgage, nor did she
> allege facts that create an inference that at least one of the 27,000 claims she
> found more likely than not links back to a falsely-certified loan." Order at 13.

> **Scienter**: "The court agrees with Carrington that the allegations in the Amended
> Complaint with respect to what Carrington knew or should have known are too
> vague to satisfy the relaxed scienter requirement . . . She never provides a
> connection between any one defect that made any loan with that defect
> universally unacceptable and the default of that loan such that Carrington would
> seek payment under the relevant insurance contract." *Id.* at 15.

> **Materiality**: "There is no attempt to address or provide facts from which an
> inference can be drawn that the 'at least one' unidentified violation was actually
> material to any decision made by HUD, much less a decision to pay Carrington . .
> . [S]he must at least try to make a connection between the allegedly fraudulent
> underwriting decisions and HUD's subsequent payment of funds to Carrington."
> *Id.* at 18.

During the pendency of Carrington's prior Motion to Dismiss, the parties engaged in

discovery. On June 21, 2017, Relator served Carrington with her First Requests for Production of

Documents, and on November 3, 2017, Relator served her Second Requests for Production of

Documents. Decl.[4] ¶ 5. Among the documents requested were files for loans that were endorsed

by Carrington during the Covered Period and that resulted in claims to the government. *Id.* ¶ 6.

Thus far, Carrington has produced 106,451 pages in response to these document requests, and its

productions are ongoing. *Id.* ¶¶ 7, 10. The documents produced include, among other things,

---

[4]      "Decl." refers to the accompanying Declaration of Niketa K. Patel filed in support of Carrington's Motion
to Dismiss the Second Amended Complaint for Failure to State a Claim.

underwriting files, servicing histories, payment histories, and claims information for loans endorsed by Carrington during the Covered Period. *Id.* ¶ 8.

Relator filed the SAC (Dkt. 79) on January 31, 2018. With the exception of parroted discovery material, the SAC is almost identical to the Amended Complaint. The SAC includes only one relevant change: it removes six of the loan numbers cited in the Amended Complaint – loans which Relator could not allege resulted in a claim to the government – and replaces them with purported facts gathered from four sets of loan files produced by Carrington during discovery. *See* Exs. 5-8 (excerpts of Bates-stamped and produced loan files). The SAC provides no additional facts from Relator's personal knowledge or any independent investigation she may have conducted.

## LEGAL STANDARD

Relator's SAC is subject to the pleading requirements of Federal Rule of Civil Procedure 8 and, because it involves allegations of fraud, the heightened standards of Rule 9(b). *United States ex rel. Gross v. AIDS Research Alliance Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). Rule 8 requires that a complaint provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

Given the nature of her allegations—a purported fraud committed by Carrington— Relator must also satisfy the requirements of Rule 9(b). *See United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016); *United States ex rel. Garst v. Lockheed-Martin*

*Corp.*, 328 F.3d 374, 376 (7th Cir. 2003). Thus, Relator must detail the "who, what, when, where, and how" of the circumstances giving rise to Carrington's alleged false claims. *Hanna*, 834 F.3d at 779; *Garst*, 328 F.3d at 376; *United States ex rel. Conroy v. Select Med. Corp.*, 2016 WL 5661566, at *15 (S.D. Ind. Sept. 30, 2016) (Young, J.).

To meet the high burden imposed by Rule 9(b) in this case, Relator must "identify specific false claims for payment or specific false statements made in order to obtain payment." *Garst*, 328 F.3d at 376 (emphases in original). When "a false statement is alleged," Relator must "connect that statement to a specific claim for payment and state who made the statement to whom and when." *Id.* And when the alleged false claims are part of a larger fraudulent scheme involving numerous transactions, Relator must at least provide the particular facts of "representative examples." *United States ex rel. Graziosi v. Accretive Health, Inc.*, 2017 WL 1079190, at *6 (N.D. Ill. Mar. 22, 2017).

Critical to this point, as discussed more fully below, these details must be provided at the outset of the case: A relator cannot file suit and hope to "learn the complaint's bare essentials through discovery." *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002). Rather, a "plaintiff must come to court with a 'claim in hand.'" *United States ex rel. Crews v. NCS Healthcare of Ill., Inc.*, 460 F.3d 853, 856 (7th Cir. 2006) (quoting *United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002)). And the plaintiff must have "direct and independent knowledge of the information on which the allegations are based." *United States ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 497 (7th Cir. 2003).

## ARGUMENT

### I.   THE SECOND AMENDED COMPLAINT IMPERMISSIBLY USES DISCOVERY MATERIAL TO ALLEGE A CLAIM UNDER THE FCA.

#### A.   The Policies Behind Rule 9(b) and the FCA's Heightened Pleading Requirements Require Relator to Allege Independent Knowledge of Fraud.

The FCA was enacted to encourage people "with knowledge of undisclosed fraud" to report such fraud. *Clausen*, 290 F.3d at 1310 n.17. This knowledge must be "direct and independent," and a whistleblower "must have voluntarily provided the information to the Government before instituting a suit." *Feingold*, 324 F.3d at 497 (citation and quotation marks omitted).

The Act imposes liability upon anyone who "knowingly presents, or causes to be presented," to the government, "a false or fraudulent claim for payment or approval," or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (B). To establish civil liability under the FCA, a relator must state with sufficient particularity "(1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false." *United States ex rel. Yannacopoulos v. Gen. Dynamics, Inc.*, 652 F.3d 818, 822 (7th Cir. 2011); *see also United States ex. rel. Morison v. Res-Care, Inc.*, 2017 WL 468287, at *2 (S.D. Ind. Feb. 3, 2017) (Young, J.) (same).

For her claim to proceed, a plaintiff must also meet the heightened pleading standards of Rule 9(b) by identifying a specific false statement and "connect[ing] that statement to a specific claim for payment and state who made the statement to whom and when[.]" *Garst*, 328 F.3d at 376. "Rule 9(b) should be applied with an eye toward fulfilling the Rule's underlying purposes." *S.E.C. v. Benger*, 697 F. Supp. 2d 932, 937 (N.D. Ill. 2010) (quoting *Gelco Corp. v. Duval Motor Co.*, 2002 WL 31875537, at *6 (N.D. Ill. Dec. 26, 2002)). These purposes include: "(1)

11

protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (citations omitted); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994) (same); *Hirata Corp. v. J.B. Oxford & Co.*, 193 F.R.D. 589, 592 (S.D. Ind. 2000) (same).[5] Thus, "[b]y requiring the plaintiff to allege the who, what, where, and when of the alleged fraud" at the outset of the litigation, "Rule 9(b) . . . forc[es] the plaintiff to do more than the usual investigation *before filing his complaint*." *Id.* at 592 (emphasis added) (quoting *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)).

The protections afforded by Rule 9(b) are particularly important in FCA cases like this, both because of the high bounty offered to successful relators and because relators are frequently former employees who have an axe to grind against their ex-employers. *See Clausen*, 290 F.3d at 1313 n.24 (recognizing that relators who fail to plead with specificity "needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements."). Accordingly, courts have expressed the need to effectuate Rule 9(b)'s underlying purposes with particular force in the context of *qui tam* suits, where there is already a clear reluctance toward granting a right of action to "opportunistic plaintiffs" who, before filing suit, "have no significant information to contribute of their own." *Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 716 (7th Cir. 2017) (quoting *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 294 (2010)).

---

[5]      *See also, e.g., United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013) (noting "multiple purposes of Rule 9(b), namely, of providing notice to a defendant of its alleged misconduct, of preventing frivolous suits, of 'eliminat[ing] fraud actions in which all the facts are learned after discovery,' and of 'protect[ing] defendants from harm to their goodwill and reputation'") (citation omitted); *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (same).

In view of these concerns, courts have steadfastly refused to grant *qui tam* relators a "ticket to the discovery process" in order to learn the specific details necessary to satisfy Rule 9(b). *United States ex rel. Lusby v. Rolls-Royce Corp.*, 2007 WL 4557773, at *8 (S.D. Ind. Dec. 20, 2007) (quoting *Clausen*, 290 F.3d at 1307); *see also, e.g., United States ex rel. Liotine v. CDW-Gov't, Inc.*, 2009 WL 720958, at *1 (S.D. Ill. Mar. 18, 2009) (granting motion to stay discovery pending ruling on Rule 9(b) motion because "the purpose of [Rule 9(b)] is frustrated by allowing a relator . . . to engage in discovery in the hope of uncovering enough specifics to adequately plead a case"); *United States v. Ortho-McNeil Pharm., Inc.*, 2007 WL 2091185, at *5 (N.D. Ill. July 20, 2007) ("Rule 9(b) does not tolerate" "suit[s] based upon [the] suspicion that Defendants engaged in unlawful conduct with the hope that discovery will unearth some specific FCA violation.").

In the same vein, a relator may not attempt to satisfy Rule 9(b) by amending his or her complaint with "new allegations based upon discovery that the relator obtained from the defendant." *United States ex rel. Underwood v. Genentech, Inc.*, 720 F. Supp. 2d 671, 678 (E.D. Pa. 2010) (citing *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004), *abrogated on other grounds by United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*, 865 F.3d 29 (1st Cir. 2017)).[6] In other words, to comply with Rule 9(b), a *qui*

---

[6]     Numerous other courts have reached similar holdings. *See e.g., Webb v. Everhome Mortg.*, 704 F. App'x 327, 330 (5th Cir. 2017) (upholding dismissal under Rule 9(b) where plaintiff sought to determine missing details of insufficient fraud claim through discovery); *United States ex rel Stinson, Lyons, Gerlin & Bustamante, P.A., v. Blue Cross Blue Shield of Ga.*, 755 F.Supp. 1040, 1052 (S.D. Ga 1990) (prohibiting relator from engaging in discovery to comply with heightened pleading obligations and noting that the "[t]he clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed.") (citation and quotation marks omitted); *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 380 (4th Cir. 2008) ("[I]f allowed to go forward, Relators' FCA claim would have to rest primarily on facts learned through the costly process of discovery. This is precisely what Rule 9(b) seeks to prevent."); *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 559 (8th Cir. 2006) (rejecting plaintiff's request to permit discovery to satisfy Rule 9(b)); *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004) ("[C]ourts have repeatedly refused to allow qui tam relators to rely on later discovery to comply with Rule 9(b)'s pleading requirements"); *Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989) ("[Plaintiff's] contention, that discovery will unearth information tending to prove his contention of fraud, is precisely what Rule 9(b) attempts to discourage."); *Knudsen*

*tam* relator's allegations must be the product of her independent knowledge and "precomplaint investigation" – not discovery material obtained from the defendant after the complaint was filed. *See Ackerman*, 172 F.3d at 469 (dismissal under Rule 9(b) proper where "plaintiffs' lawyers still had not completed the required investigation" to learn specific details of alleged fraud); *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1108 (7th Cir. 2014) (specific details needed to satisfy Rule 9(b) "are all things that [plaintiff], if he isn't fabricating the incident, would know without having to conduct discovery."); *In re Discovery Zone Sec. Litig.*, 943 F. Supp. 924, 941 (N.D. Ill. 1996), *superseded on other grounds in Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827 (N.D. Ill. 2000) (To be sufficient under Rule 9(b), a complaint "must necessarily be drafted without the benefit of discovery."). To hold otherwise would be manifestly inconsistent with the purposes underlying Rule 9(b) and the FCA.

## B.   The Court Should Disregard All Allegations Based on Facts Learned Through Discovery.

When dismissing Relator's previous complaint, this Court made clear that Relator needed to make numerous allegations to satisfy Rule 9(b). Specifically, the Court held that Relator "never connects a single loan to a specific fraudulent underwriting practice performed by a specific individual" and never "connect[s] an FHA-insured mortgage obtained through a fraudulent practice to a claim for payment on a defaulted loan made by Carrington." Order (Dkt. 75) at 12-13. Citing these deficiencies, among others, the Court held that Relator "failed to allege the elements of falsity, scienter, or materiality to support her FCA claims." *Id.* at 11. The Court invited Relator to "at least try to make a connection between the allegedly fraudulent

---

*v. Sprint Commc'ns Co.*, 2016 WL 4548924, at *15 (N.D. Cal. Sept. 1, 2016) ("[D]iscovery is an inappropriate avenue to cure . . . deficient pleadings); *United States ex rel. Bingham v. HCA, Inc.*, 2016 WL 6027115, at *5 n.6 (S.D. Fla. Oct. 14, 2016) ("Material learned through discovery . . . cannot cure an FCA complaint's failure to satisfy Rule 9(b)." (citing *Clausen*, 290 F.3d at 1313 n.24)); *United States ex rel. Polansky v. Pfizer, Inc.*, 2009 WL 1456582, at *10 (E.D.N.Y. May 22, 2009) (denying plaintiff's request for discovery to learn details necessary to satisfy Rule 9(b)).

underwriting decisions and HUD's subsequent payment of funds to Carrington." *Id.* at 18. But nothing in the Court's ruling gave Relator permission to use discovery obtained from Carrington to cure those deficiencies. And nothing in the FCA or the caselaw allows Relator to do that either.

In the SAC, Relator impermissibly uses loan files produced by Carrington during discovery – loan files that were produced even though Relator's Amended Complaint failed to state an FCA claim – in an attempt to save her pleading.[7,8] Ex. 9 is a comparison document which identifies the differences between the Amended Complaint and the SAC. Decl. ¶ 19. The comparison demonstrates that Relator deleted the six example loans that she had previously alleged were fraudulent. Ex. 9 at 2. The comparison also reveals two new paragraphs in the SAC: Paragraphs 6 and 10. *Id.* at 2-17, 19. Paragraph 10 alleges that Carrington committed fraud by submitting mortgage insurance certifications in an untimely manner. It is completely unrelated to the fraudulent underwriting claims or any specific loans, and does not allege an FCA claim for reasons that are discussed *infra* Section II.A.4. In contrast, Paragraph 6's allegations are loan-specific, and derived exclusively from discovery material Carrington has produced in this matter. *See* Exs. 5-8 (excerpts from Bates-stamped and produced loan files).[9,10]

---

[7]     While its motion to dismiss Relator's Amended Complaint was pending, Carrington produced loan files for some of the FHA-insured loans it endorsed during the Covered Period, and upon which claims for insurance were submitted to HUD. Decl. ¶ 9. These productions were made on November 10, 2017 and November 17, 2017, and were marked with a Bates-stamp identifier at the time of production. *Id.*

[8]     Carrington filed a motion to stay discovery in this matter on February 20, 2018. *See* Dkt. 86. In the motion, Carrington argued that a "stay [of discovery would] support the policies underlying the particularity requirements of Federal Rule of Civil Procedure 9(b)," where the Court has yet to determine if Relator has "alleged violations of the False Claims Act with sufficient particularity." Memorandum in Support of Motion to Stay Discovery (Dkt. 87) at 7. *United States ex rel. Schutte v. Supervalu, Inc.,* 2016 WL 3906570, at *1 (C.D. Ill. July 14, 2016). In particular, Carrington noted that, as it continues to produce loan files and claims information – a burdensome and costly endeavor – Relator may continue to improperly amend her pleading in an attempt to save her claims. Magistrate Judge Dinsmore denied the motion on February 23, 2018. *See* Dkt. 89.

[9]     The excerpts in Exhibits 5 through 8 are Bates-Stamped documents produced by Carrington that contain much of the loan-specific information Relator now relies upon in order to plead her claims with particularity. While Carrington does not attach the complete loan files here, as they are voluminous, these excerpts alone demonstrate that Relator used these loan files to make her allegations. Specifically, Relator used the information in Exhibit 5 to

Beyond copying and pasting the information in the loan files produced by Carrington, Relator engages in a post-hoc interpretation of these loan files to re-plead her case, making assumptions and interpretations in an attempt to allege a "representative example" of the purported fraudulent scheme. *See* SAC ¶ 6. However, the SAC is devoid of any allegation that Relator (1) acted as an underwriter for any of these loans, or (2) spoke contemporaneously with any Carrington employee that did work on these files. This lack of independent knowledge renders Relator unable to allege, beyond a conclusory manner, that Carrington knowingly provided false certifications for the loans it endorsed. *Id.*

This parroting of discovery material in the SAC is exactly the type of "defamatory and extortionate" behavior by a plaintiff who has not conducted the proper "precomplaint investigation" that is prohibited by Rule 9(b). *Ackerman*, 172 F.3d at 469-70; *see also Hanna*, 834 F.3d at 780 ("This may be the real problem with [relator]'s case: the FCA is meant to encourage whistleblowing by insiders, and [relator] seems to have no insider knowledge."). And allowing Relator to satisfy Rule 9(b) in this manner would undermine both Rule 9(b) and the purpose of the FCA.

---

make her allegations for Loan 1, SAC ¶ 6.a. (the excerpt shows that the borrower was approved for a loan to purchase a property in Lindale, Texas (cited by Relator at *id.*), the borrower had verified assets of $11,328.69 (cited by Relator at *id.* ¶ 6.a.xiii-xiv), the purchase was partially financed with an $11,000 gift (cited by Relator at *id.* ¶ 6.a.xx), and the underwriter on the loan had CHUMS ID Bf49 (cited by Relator at *id.* ¶ 6.a.xix). Exhibit 6 relates to Loan 2, SAC ¶ 6.b. (the excerpts show that the borrower was approved for a loan to purchase a property in Florence, Kentucky (cited by Relator at *id.* ¶ 6.b.iii.), the purchase price was $99,800 (cited by Relator at *id.*), the borrower's monthly income was $2,833 (cited by Relator at *see id.* ¶ 6.b.viii.), and the underwriter on the loan had CHUMS ID Aa79 (cited by Relator at *id.* ¶ 6.b.xv). Exhibit 7 relates to Loan 3, SAC ¶ 6.c., (the excerpts show that the borrower was approved for a loan to purchase a property in Bonaire, Georgia (cited by Relator at *id.*), the purchase price was $106,000 (cited by Relator at *id.*), the borrower's monthly income was $3750.07 (cited by Relator at ¶ 6.c.v.), and the underwriter on the loan had CHUMS ID GA38 (cited by Relator at *id.* ¶ 6.c.x.). Finally, Exhibit 8 relates to Loan 4, SAC ¶ 6.d. (the excerpts show that the borrower was approved for a refinance on a property in Savannah, Georgia (cited by Relator at *id.*), the specific refinance involved was a "streamline" refinance (cited by Relator at *id.*,), the borrower had recently been divorced, (cited by Relator at *id.* ¶ 6.d.ii-iii.), and the underwriter on this refinance had CHUMS ID Hg20 (cited by Relator at *id.* ¶ 6.d.iv.).

[10]    The excerpts from these loan files have been redacted to protect non-public personal information, such as borrower information.

A recent FCA case – *United States ex rel. Bingham v. HCA, Inc.* – is instructive on this issue. In *Bingham*, the relator alleged that defendant, a healthcare services provider, perpetrated a healthcare fraud scheme at two medical facilities it owned. 2016 WL 344887, at *1 (S.D. Fla. Jan. 28, 2016). Ruling on defendant's motion to dismiss the amended complaint, the court dismissed one of relator's FCA claims under Rule 9(b) and granted leave to amend. *Id*. at *8-9. The *Bingham* relator subsequently filed a second amended complaint and defendant moved to dismiss arguing "that [relator] impermissibly use[d] information learned through discovery to supplement allegations in his [second amended complaint], and that without that information, the [second amended complaint] is so threadbare as to warrant dismissal." 2016 WL 6027115, at *4 (S.D. Fla. Oct. 14, 2016). The *Bingham* court agreed and ordered "all facts learned through discovery . . . stricken from the [second amended complaint]" under Fed. R. Civ. P. 12(f), and the claims dismissed. *Id*. at *5 & n.6. As support for its decision, the court cited both the FCA's focus on granting a right of action only to citizens with "independently-obtained knowledge of fraud," and the principle that Rule 9(b) cannot be satisfied with "details [that] emerge through subsequent discovery." *Id*. at *4.

In this case, Relator's loan-specific and claim-specific allegations, which rely exclusively on information obtained through discovery, are exactly the type of allegations that were stricken in *Bingham*. They are a poor attempt to disguise her lack of independent knowledge of a single false claim presented to the government. As such, the Court should disregard the allegations in Paragraph 6 of the SAC, and any reference to such allegations throughout. As explained in *Bingham*, information learned through discovery is "immaterial" because it plainly cannot cure an FCA complaint that was previously dismissed for failure to satisfy 9(b). Furthermore, any allegations based on purported facts learned through discovery prejudice Carrington, particularly

where Relator has thus far offered nothing of her own to show that her claims of fraud are "responsible and supported" at the outset of this litigation. *Ackerman*, 172 F.3d at 469.

Once the allegations derived from discovery material are disregarded, the SAC becomes nothing more than a carbon copy of the Amended Complaint. The Court dismissed that pleading for failure to satisfy Rule 9(b), and it should similarly dismiss the SAC– this time with prejudice.

## II.   THE SECOND AMENDED COMPLAINT FAILS TO ALLEGE A CLAIM UNDER THE FCA.

Once stripped of the alleged facts learned exclusively through discovery, it is clear that the SAC fails to allege an FCA claim with the particularity required by Rule 9(b). But even *with* the benefit of those alleged facts, Relator still fails to adequately allege the elements of falsity, scienter, or materiality in the manner necessary to support her claims. The failure to allege any one—much less all three—of these necessary elements requires the dismissal of Relator's claims.

### A.   The Second Amended Complaint Fails to Allege Falsity.

Relator's allegations of falsity generally fall into three categories of conduct: (1) reckless underwriting and false certification of loans for FHA insurance; (2) manipulating data entered into TOTAL/AUS and communicating the results to borrowers; and (3) violation of HUD's self-reporting requirements. *See, e.g.*, SAC ¶¶7-9. Separately, Relator alleges that Carrington was tardy in submitting loans to FHA for mortgage insurance coverage. *Id.* ¶ 10. For numerous reasons, the SAC has not plausibly alleged that any category of conduct amounts to false claims or false statements connected to claims for payment—and it certainly has not done so with the particularity required by Rule 9(b).

To plead falsity, Relator must allege that Carrington improperly sought FHA insurance payouts on specific defaulted mortgage loans that did not originally meet HUD's underwriting

requirements. The Seventh Circuit has consistently held that, when bringing fraud claims, the plaintiff must describe "the who, what, when, where, and how [of the alleged fraud]: the first paragraph of any newspaper story." *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009); *see also Hanna*, 834 F.3d at 779 (same). In other words, Rule 9(b) requires the plaintiff to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

Further, "[w]here the allegedly false certification relates to a failure to comply with certain statutory and regulatory provisions, the plaintiff should be able to tell the [defendant] which [provisions] it flouted, and how and when." *Hanna*, 834 F.3d at 779; *see also Crews*, 460 F.3d at 858 (upholding summary judgment on FCA claim where plaintiff "fail[ed] to point to a federal regulatory requirement" that defendant violated); *United States ex rel. Fowler v. Caremark RX, Inc.*, 2006 WL 3469537, at *6 (N.D. Ill. Nov. 30, 2006) (holding FCA allegations not particular where plaintiff did not "specifically identify which regulation" defendant violated).

As such, Relator must provide specific examples demonstrating that individual Carrington underwriters acted with the requisite scienter in certifying specific mortgage loans as eligible for FHA insurance or refinancing when they were, in fact, in violation of the applicable HUD requirements, and that these same mortgage loans defaulted and led to specific claims for payment made by Carrington. While Relator uses prior discovery in this case to identify four loans that defaulted, she has not alleged with the required particularity that the bases upon which Carrington obtained FHA insurance were false.

19

1.      **Allegations Regarding False Certifications.**

Relator alleges that Carrington submitted false certifications to HUD by "approv[ing]" loans for government insurance and refinancing that clearly did not meet the applicable underwriting requirements." SAC ¶ 6. Relator then attempts to provide loan-specific examples by reciting and interpreting information from various loan files produced by Carrington. *See, e.g.*, Exs. 5-8 (excerpts of Bates-stamped and produced loan files). Even if these materials could be used to plead an FCA claim – which they cannot – the manner in which Relator uses them does not amount to a sufficiently pled allegation of falsity for a number of reasons.

To start, Relator falls far short of pleading the "what" or the "specific fraudulent underwriting practice." Order at 12. Throughout her loan-specific allegations, Relator states that the loan files she reviewed show multiple Desktop Underwriting ("DU") system submissions by the underwriter. *See, e.g.*, SAC ¶¶ 6.a.iii-iv, vii-xviii. She alleges that the multiple submissions are "evidence of manipulation of the system and fraudulent submissions." *Id.* ¶ 6.a.iii. But nowhere does she point to a single HUD guideline that prohibits underwriters from running these submissions more than once. Nor does she cite to a HUD requirement that places a limit on the number of times an underwriter is permitted to enter application data for the same loan into DU. In fact, no such requirement exists. *See, generally* Ex. 1 (FHA Single Family Housing Policy Handbook 4000.1).

And there are a number of reasons why an underwriter may need to run multiple submissions, such as (a) changes in information after verification is initially received from employers or banks, (b) changes during the application period in income, assets, or debts of the borrower, or (c) appraisal updates affecting value. Relator makes no allegation that any of these conditions did not exist for the specific loans she cites. Accordingly, she has not done enough to "nudg[e]" these allegations regarding multiple DU submissions "across the line from

20

conceivable to plausible." *Twombly*, 550 U.S. at 570.[11] Such vague descriptions of violations, without citation to the requisite provisions, renders it "nearly impossible for [Carrington] to prepare a defense." *Hanna*, 834 F.3d at 779-80.

Where Relator does cite to a specific HUD requirement that was allegedly violated, she often misstates the provision. For example, although all the loans referenced in the SAC were underwritten by computer – that is, using DU, a HUD-approved AUS – Relator cites to HUD guidelines that apply only when the loan is *manually* underwritten. *See, e.g.*, SAC ¶ 6.a.xvi. (quoting Ex. 3[12] (HUD Handbook 4155.1, Chapter 4, Section C) at Section 4.C.2.d. that applies to "Collection Accounts and Judgments *Applicable to Manually Underwritten Loans*" (emphasis added)). Relator's attempt to plead falsity in this fashion cannot meet the test for particularity. *See Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733 (7th Cir. 1999) (holding that relator failed to plead falsity where she alleged that defendant was required to perform certain tests that the relevant regulations did not require defendant to perform).

Other HUD guidelines cited in the SAC are not as clear-cut as Relator would have the Court believe. Relator alleges that Carrington's underwriters failed to document or explain certain debts on some loans in violation of DU requirements. *See, e.g.*, SAC ¶¶ 6.a.v., 6.b.vii. The HUD guidelines provide a detailed list of the different categories of borrower debt, and the documentation or explanation required for each. *See* Ex. 1 (FHA Single Family Housing Policy Handbook 4000.1) at Section II.A.4.b.iii-iv. For example, if a borrower's debt is classified as,

---

[11]    These are not the only allegations relating to falsity that are unsupported by any citation to a corresponding HUD requirement. Throughout Paragraph 6, Relator makes conclusory statements that certain documentation in the loan file is evidence of fraud or violates HUD's rules without specifying a particular requirement. *See, e.g.*, SAC ¶ 6.a.v. ("The following accounts were noted as omitted from the Underwriting Analysis. DU requires that documentation be provided to support the omission. No documentation was provided."); SAC ¶ 6.b.xii. ("Applicants [sic] statement is directly contradicted by Carrington Underwriter Aa79 who indicates in the Loan Transmittal that Borrower 2 had been paying the mortgage at her father's home while she lived there. This intentional misrepresentation of facts is evidence of fraud on the U.S. Government, which resulted in damages thereto.").
[12]    HUD Handbook 4155.1 is incorporated by reference into the SAC. *See, e.g.*, SAC ¶¶ 6.a.ii-iii, 6.b.viii, 6.c.vii, 6.d.iii.

among other things, a "collection account[]," "charge off account[]," or "judgment[]," then the underwriter "is <u>not</u> required to obtain an explanation." *Id.* at Section II.A.4.b.iii.A (emphasis added). Moreover, certain obligations that are represented as "debt" on a typical credit report are not considered "debt" for the purposes of underwriting an FHA loan. *See id.* at Section II.A.4.b.iv.Q. Thus, without additional detail regarding the nature of the debts that Relator alleges were insufficiently documented or explained, Relator fails to provide sufficient "context which would enable a reader of the complaint to understand why [Carrington's] alleged actions amount to [a violation of HUD guidelines]." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 780 (7th Cir. 2016). Of course, Relator is unable to provide this context given her lack of independent knowledge about any of these loan-specific allegations, which were derived purely from discovery materials.

More generally, Relator bases all of her loan-specific and claim-specific allegations on her after-the-fact review and interpretation of loan files produced by Carrington. If Relator alleges that a particular document, such as a gift letter, is not in the file, she states in a conclusory fashion that the missing document is a violation of HUD guidelines. *See, e.g.*, SAC ¶ 6.a.i. In doing so, Relator makes several leaps and assumptions that are unsupported by any facts alleged in the SAC. She does not allege that these loan files should typically contain gift letters, or other allegedly missing documentation, or that such documentation was not collected and provided to HUD at a later date. Nor does she allege that these loan files are the complete universe of documents applicable to a loan, from application to post-closing. And she cannot because she does not know: She had never heard of these loans before discovery commenced in this case. In other words, insofar as Relator bases her claims on these loan files, her allegations are limited to their contents.

22

It is no surprise that Relator also has trouble alleging the "who" and "where" of the alleged fraud. She has no personal and independent knowledge of how these loans were underwritten, thus she is unable to identify where the four loans were originated, or which "specific individual" underwrote the Sample Loans. Order at 12. As such, the allegations in the SAC do not come close to satisfying the "who, what, when, where and how" requirement that this Circuit has endorsed.

### 2.      Allegations Regarding Data Manipulation.

Relator's second attempt to plead falsity fares no better. The SAC alleges that Carrington employees manipulated AUS/TOTAL by entering data "that lacked integrity," SAC ¶ 40, "in order to determine the data point values that would generate an 'accept/approve' rating." Relator claims that "[m]any of these employees then communicated the qualifying data point values to the borrowers or their agents, thus inviting borrower fraud." *Id.* These allegations do not differ from what was alleged in the Amended Complaint in any meaningful way. Indeed, the only new information Relator has provided with respect to this category of conduct is a catchall reference to "Paragraph 6" peppered throughout the SAC. *See, e.g., id.* ¶¶ 8, 40-41. However, the reference to Paragraph 6 does not cure several pleading deficiencies with respect to this bucket of claims.

First, Paragraph 6 of the SAC – which references four specific loans pulled from Carrington's discovery productions – only alleges that certain unnamed Carrington underwriters made multiple DU submissions. As discussed *supra* at Section II.A.1., Relator fails to allege which HUD requirements are violated by the submission of multiple DU reports. Indeed, it is entirely plausible that these multiple reports were submitted for reasons other than to determine qualifying data point values. Without pointing to a specific regulation that prohibits these practices, Relator's allegations amount to nothing more than her "subjective disagreement with

[Carrington] on the most prudent course of action[,]. . . . [which] is not a sufficient basis for a fraud claim." *Presser*, 836 F.3d at 780.

Second, Relator still fails to offer any requisite details to support her allegation that Carrington "communicated the qualifying data point values to the borrowers or their agents, thus inviting borrower fraud." SAC ¶ 40; *see also id.* ¶¶ 8, 41. Nowhere does Relator allege that Carrington employees actually communicated the results of these DU submissions to borrowers or their agents. Further, Relator fails to allege which HUD requirements are violated by any alleged communication of qualifying data points to borrowers.

Third, and most significantly, Relator does not even allege that any of the data ultimately submitted by borrowers was actually false. Indeed, her lack of independent knowledge of any of the loans named in the SAC prevents her from doing so. Instead, all that can be gleaned from the SAC is that "many Carrington loan officers and/or underwriters" continued to work with loan applicants to obtain the funding they needed to purchase or refinance their homes—the precise goals of the FHA program. *Id.* ¶ 40.

### 3.    Allegations Regarding Self Reporting Violations.

Relator's third attempt to plead falsity fails as she does not cite to any specific false claims for this category of alleged conduct. Relator's SAC continues to allege that a Carrington employee purportedly directed Relator not to report in the FHA Connection system a denial for a specific loan application, violating what Relator claims is a HUD self-reporting requirement. SAC ¶ 9. However, as it ruled previously, the Court should dismiss the allegations with respect to the specific loan mentioned in Paragraph 9 because "Calderon again fails to provide a connection between the allegedly wrongful practice and any specific loan or subsequent default of that loan that would require the government to pay Carrington." Order at 14; *see also Garst*, 328 F.3d at 378 (affirming dismissal of claims where the complaint described "specific

24

allegations of deceit," but "fail[ed] to link them to any claim for payment"); *Crews*, 460 F.3d at 856 (granting motion to dismiss where qui tam action failed because "relator did not provide a single false claim that was actually submitted."); *United States ex rel. Soulias v. Nw. Univ.*, 2013 WL 3275839, at *3 (N.D. Ill. June 27, 2013) ("To satisfy Rule 9(b) for an FCA claim, a relator must plead at least some actual examples of false claims.").

And Relator does nothing to "rebut the inference that Carrington performed quality audits and uncovered nothing." Order at 14. Her SAC does not allege that Carrington determined any loan to be fraudulent in its quality reviews, which Calderon admits was performed by Carrington on its loans. SAC ¶¶ 9, 39.

Relator makes a last-ditch attempt to save this bucket of allegations by loosely referencing Paragraph 6 – her loan-specific allegations from discovery material. *Id.* ¶ 9. However, the allegations in Paragraph 6 make no mention of any self-reporting violation, or any quality control review that revealed a determination of fraud on the loans. *Id.* ¶ 6. As such, her allegations fall woefully short of pleading falsity on this bucket of claims.

### 4. Allegations Regarding Delay In Submission of Loans to FHA.

Aside from Paragraph 6 (and the blanket references to that paragraph that appear throughout the SAC), the only additional allegation Relator makes concerns a new category of peripherally fraudulent conduct, unrelated to FHA underwriting. SAC ¶ 10. Relator vaguely alleges that, "[i]n late 2014 and early 2015," certain Carrington employees directed underwriters to "get thousands of FHA loans properly insured." SAC ¶ 10. Relator claims that "[m]any of these loans had been closed for many months . . . without Carrington having submitted them to FHA for mortgage insurance coverage," and that "borrowers were paying Carrington mortgage insurance premiums" during this time. *Id.*

25

Relator's allegations with respect to this category of conduct are glaringly deficient: (1) Relator fails to cite any HUD requirement or other rule that was violated by this alleged practice; (2) Relator does not attempt to name any specific Carrington employees that were involved in the purported fraud; (3) Relator provides no details of where the fraud occurred; (4) Relator cannot identify a single loan that was insured pursuant to the allegedly fraudulent scheme; and (5) Relator does not allege that any loans involved in the purported fraudulent scheme resulted in claims made to the government. *Id.* The allegations entirely ignore the "who, what, when, where, and how" requirement of Rule 9(b).

Further, to the extent Relator is alleging this practice was fraudulent because "borrowers were paying Carrington mortgage insurance premiums, when in fact their mortgages were not insured," *id.*, the FCA is only concerned with frauds perpetrated against the *government*, not private individuals. *See Hindo v. Univ. of Health Scis./ Chicago Med. Sch.*, 65 F.3d 608, 612 (7th Cir. 1995) ("An aim of the Act is to encourage 'private individuals who are aware of fraud being perpetrated against the Government to bring such information forward.'") (quoting H.R. Rep. No. 99-660, at 23 (1986)). For these reasons, the allegations in Paragraph 10 fail to allege falsity.

## B.     The Second Amended Complaint Fails to Allege Scienter.

The FCA also requires plaintiffs to allege specific, particularized facts demonstrating that the defendant had "actual knowledge" of the falsehood, or acted in "deliberate ignorance" or "reckless disregard" of it.  *Yannacopoulos*, 652 F.3d at 833 n.14 (citing 31 U.S.C. § 3729(b)); *see also Doe v. Houchens Indus., Inc.*, 2015 WL 133706, at *4 (S.D. Ind. Jan. 9, 2015) (Young, J.) (same). The Supreme Court has recently stressed the importance of the FCA's scienter requirement, noting that it is "stringent," "rigorous," and intended to address "concerns about fair notice and open-ended liability." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1994, 2002 (2016).

Relator continues to allege in conclusory fashion that Carrington "knowingly, or acting with deliberate ignorance and/or with reckless disregard for the truth, presented or caused to be presented false or fraudulent claims" and "false records and/or statements." SAC ¶¶ 47, 52. To support this conclusion, Relator alleges that (1) Carrington knew or should have known that the certifications and claims it made were false, (2) Carrington knowingly or recklessly encouraged borrower fraud, and (3) Carrington knew that it was required to report borrower fraud under an unidentified HUD self-reporting requirement.[13] For purposes of efficiency, Carrington respectfully refers the Court back to its Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint (Dkt. 49) at 17-23 for an analysis on why Relator fails to allege scienter with these vague, conclusory statements – an analysis with which the Court concurred: "The court agrees with Carrington that allegations in the Amended Complaint with respect to what Carrington knew or should have known are too vague to satisfy the relaxed scienter requirement." Order at 15.

Relator's new allegations in the SAC do nothing to change that analysis. Although Relator has now identified specific loans that resulted in claims – albeit impermissibly from discovery materials produced by Carrington – Relator is still unable to allege any actual knowledge, deliberate ignorance, or reckless disregard by Carrington employees that worked on these loans because Relator does not allege that she nor any other specific Carrington employee had contemporaneous knowledge of the alleged fraud.

Relator is also unable to allege even an *inference* of scienter because she has not provided the particularized details that the Court requested in its Order:

---

[13] The SAC does not bother to allege even a conclusory statement of scienter for the allegations pertaining to any delay in submitting loans for mortgage insurance. *See* SAC ¶ 10. As such, the Court should dismiss these allegations for failure to plead scienter, as well as falsity.

> [Calderon] never provides a connection between any one defect that made any
> loan with that defect universally unacceptable and the default of that loan such
> that Carrington would seek payment under the relevant insurance contract.
> Further, the Amended Complaint all but admits that underwriting a loan is a
> discretionary activity that can be subjective, even under HUD's guidelines. In
> such a circumstance, more details seem to be necessary to support an inference
> that Carrington knowingly falsified material data for hundreds or thousands of
> HUD insured loans that were later defaulted. **Specifically, such details might
> include what specific inaccuracies were perpetrated, how they were
> universally unacceptable, and why, more likely than not, those decisions led
> to default.**

Order at 15-16 (citations omitted) (emphasis added).

With respect to "specific inaccuracies," as discussed *supra* at Section II.A.1., there are

serious flaws in Relator's falsity allegations for the specific loans cited in Paragraph 6 of the

SAC. And if Relator has not sufficiently alleged a violation of a particular HUD requirement, she

cannot establish that Carrington knew or should have known that the alleged violations rendered

the loans ineligible for FHA insurance.

Even if the Court accepts that Relator has alleged specific inaccuracies with respect to the

loans named in the SAC, there are absolutely no allegations that these inaccuracies were

universally unacceptable: Relator does not claim that any one inaccuracy, in all instances, would

have been regarded by HUD as fatal to FHA's insurance of the loan. As such, there is nothing to

suggest that the alleged inaccuracies were knowing, rather than inadvertent, errors by Carrington,

which are "not actionable" under the FCA. *Yannacopoulos,* 652 F.3d at 832; *see also United*

*States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005) ("[F]raud requires

more than breach of promise: fraud entails making a false representation, such as a statement that

the speaker will do something it plans not to do. Tripping up on a regulatory complexity does not

entail a knowingly false representation."); *United States ex rel. Rockey v. Ear Inst. of Chicago,*

*LLC*, 92 F. Supp. 3d 804, 820 (N.D. Ill. 2015) (same). In fact, Relator's own allegations suggest

28

that any inaccuracies could be plausibly attributed to the fact that underwriting a loan is a discretionary risk assessment made by underwriters and expressly authorized by HUD. SAC ¶¶ 17-20, 26; 24 C.F.R. § 203.5(d).

Accordingly, the Court should once again dismiss Relator's scienter allegations as "too vague to satisfy [even] the relaxed scienter requirement." Order at 15.

### C.   The Second Amended Complaint Fails to Allege Materiality.

As the Court recognized, materiality is an independent prerequisite of any FCA claim. Order at 16-18; *see also Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 665 (2008) (explaining that to be actionable, a false statement must be "material to the Government's decision to pay or approve the false claim"); *accord Rockey*, 92 F. Supp. 3d at 822. Recently, the Supreme Court announced in *Universal Health Servs., Inc.* that the FCA's materiality requirement is "rigorous" and "demanding." 136 S. Ct. at 1994, 2002. The *Universal Health Services* Court set out several factors to evaluate the requirement including: "(1) whether the government expressly identifies a provision as a condition of payment; (2) whether the defendant knows that the government consistently refuses to pay claims in the 'mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement' at issue; (3) whether the government pays claims in full despite actual knowledge that certain requirements were violated; and (4) whether the government pays claims in full despite actual knowledge that certain requirements were violated and has signaled that it will not change its position." Order at 16 (citing *Universal Health Servs., Inc.*, 136 S. Ct. at 2003).

This Court has already held that Relator's Amended Complaint failed to plead the materiality element of an FCA claim. Order at 17 ("[T]he Court must agree with Carrington that the Amended Complaint in this case is deficient with respect to the materiality element."). Specifically, the Court stated:

29

> Rather than providing examples of regulatory and/or guideline violations that HUD has considered material in other cases, the Amended Complaint merely recites in a generalized manner that hundreds or thousands of loans "contained at least one material violation of the applicable HUD underwriting guidelines." There is no attempt to address or provide facts from which an inference can be drawn that the "at least one" unidentified violation was actually material to any decision made by HUD, much less a decision to pay Carrington.

Order at 17-18 (internal citation omitted.)

Relator's SAC makes no attempt to cure these deficiencies. It still cites in a generalized manner that "[t]housands" of "loans contained at least one material violation of the applicable HUD underwriting guidelines." SAC ¶ 39. And with regards to the specific loans she cites that are derived from discovery materials, Relator makes no allegation that any of the specific underwriting violations – to the extent that any are identified by Relator – were material to decisions made by HUD – i.e., that the supposed violations are so central to the FHA program that HUD routinely denies insurance, "routinely rescinds contracts," or routinely requires indemnification based on the alleged violations. *Universal Health Servs., Inc.*, 136 S. Ct. at 2001.[14] In fact, there is no allegation that HUD *ever* rejected loans for these supposed violations, never mind routinely.

The Court made clear Relator "must at least try to make a connection between the allegedly fraudulent underwriting decisions and HUD's subsequent payment of funds to Carrington." Order at 18. Relator has done no such thing. As such, to allow Relator to proceed on the current allegations would render the FCA "an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Universal Health*

---

[14]    Courts applying the *Universal Health Services* test have not hesitated to dismiss complaints for failing to plead facts showing materiality. *See e.g.*, *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447-8 (7th Cir. 2016); *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 779 (7th Cir. 2016); *City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1078-79 (N.D. Ill. 2016); *United States ex rel. Scharff v. Camelot Counseling*, 2016 WL 5416494, at *8-9 (S.D.N.Y.  Sept. 28, 2016); *United States ex rel. Lee v. N. Adult Daily Health Care Ctr.*, 2016 WL 4703653, at *11-12 (E.D.N.Y. Sept. 7, 2016).

*Servs., Inc.*, 136 S. Ct. at 2003 (internal citation and quotation marks omitted); *see also Yannacopoulos*, 652 F.3d at 824 n.4 ("Violations of laws, rules, or regulations alone do not create a cause of action under the FCA."); *Gross,* 415 F.3d at 604 ("An FCA claim premised upon an alleged false certification of compliance … also requires that the certification of compliance be a condition of or prerequisite to government payment."); *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 n.2 (7th Cir. 1999) ("[T]he FCA is not an appropriate vehicle for policing technical compliance with administrative regulations.").

Separately, Relator also fails to satisfy the materiality requirement because she does not allege that Carrington had knowledge that certain underwriting requirements were material to HUD's payment decision. In *Universal Health Services*, the Supreme Court also held that an FCA complaint must allege facts to show that "the defendant knowingly violated a requirement *that the defendant knows is material* to the Government's payment decision." 136 S. Ct. at 1996 (emphasis added). Thus, a complaint must plead facts showing that "the defendant *knows* that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement" at issue. *Id.* at 2003 (emphasis added). For purposes of efficiency, Carrington respectfully refers the Court to its discussion of this issue in its Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint. *See* Def. Mot. to Dismiss Am. Compl. (Dkt. 49) at 23-28. The same analysis applies here as the relevant allegations have not changed with Relator's latest pleading.

For these reasons, Relator's SAC should be dismissed for failing to meet the materiality requirement as well.

## III.   THE COURT SHOULD DISMISS THE SECOND AMENDED COMPLAINT WITH PREJUDICE.

Fed. R. Civ. P. 15 allows litigants to amend their pleadings "once as a matter of course" and then either "with opposing party's written consent" or with the "court's leave." Fed. R. Civ. P. 15(a). While courts should "give leave when justice so requires," *id.*, Rule 15 does "not mandate that leave be granted in every case." *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002). In the Seventh Circuit, it is well settled that leave to amend can and should be denied when there is "repeated failure to cure deficiencies by amendments previously allowed[.]" *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). Here, Relator has "repeatedly failed to remedy the same deficiency," and should not be given leave to amend her pleading any further. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997).

This is the third time Relator has attempted to plead her claims. In Carrington's motion to dismiss the original Complaint, it pointed out that Relator had failed to plead even one loan number or employee involved in the fraudulent conduct. *See* Mem. of Law in Support of Def. Mot. to Dismiss Compl. (Dkt. 26) at 9-13. Relator subsequently amended her Complaint (Dkt. 40) as a matter of course before briefing on Carrington's motion to dismiss was complete, and in so doing conceded the insufficiency of her initial pleading before the Court. Then, after the Court dismissed all her allegations for failure to "connect an FHA-insured mortgage obtained through a fraudulent practice to a claim for payment on a defaulted loan made by Carrington," Order at 12-13, Relator amended her pleading yet again to include information gleaned from discovery on loans that resulted in claims. Dkt. 79. As discussed *supra* at Section I.B., this use of discovery material is both improper and insufficient to sustain her claims.

32

The Court's specific instructions to Relator on how to cure her deficiencies in the Amended Complaint are worth revisiting if only to show that Relator has not complied with any of them. Relator still fails to:

- "Connect[] a single loan to a specific fraudulent underwriting practice performed by a specific individual." Order at 12.
- "Allege facts that create an inference that at least one of the 27,000 claims she found more likely than not links back to a falsely-certified loan." *Id.* at 13.
- "Point[] to any loan that Carrington determined to be fraudulent." *Id.* at 14.
- Provide an argument "to rebut the inference that Carrington performed quality audits and uncovered nothing." *Id.* at 14.
- "[P]rovide[] a connection between any one defect that made any loan with that defect universally unacceptable and the default of that loan such that Carrington would seek payment under the relevant insurance contract." *Id.* at 15.
- Allege details about "what specific inaccuracies were perpetrated, how they were universally unacceptable, and why, more likely than not, those decisions led to default." *Id.* at 15-16.
- "[P]rovid[e] examples of regulatory and/or guideline violations that HUD has considered material in other cases." *Id.* at 17.
- "[A]t least try to make a connection between the allegedly fraudulent underwriting decisions and HUD's subsequent payment of funds to Carrington." *Id.* at 18.

The Court has provided Relator with ample guidance on what she needs to allege in order to comport with Rule 9(b). Save for the inclusion of one numbered paragraph, which consists solely of impermissibly-included information obtained during discovery, Relator's allegations in the SAC remain the same. In other words, she has nothing new to bring to the table. At some point, "enough is enough." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011); *see also United States ex rel. Lisitza v. Par Pharm. Cos.*, 2013 WL 870623, at *7 (N.D. Ill. Mar. 7, 2013) ("This is the third version of the relator's expansive complaint, which has also been reviewed and considered by the United States (which declined after its own investigation to intervene in the claims asserted against these defendants). There is, therefore, little reason to believe that further amendment is likely to cure the complaint's failure[s].").

33

Accordingly, Carrington urges this Court to exercise its rights "dismiss [] the complaint, with prejudice, for [Relator's] inability or unwillingness to conform [her] pleadings to Rules 8 and 9." *Garst*, 328 F.3d at 376; *see also Stanard v. Nygren*, 658 F.3d 792, 801 (7th Cir. 2011) (affirming district court decision dismissing plaintiff's complaint with prejudice and denying plaintiff leave to file a second amended complaint where plaintiff's amended complaint had failed to comport with "basic instructions from the court"). *Accord Airborne Beepers & Video*, 499 F.3d at 667-68; *Gen. Elec. Capital*, 128 F.3d at 1085. To allow Relator to further amend her pleading, particularly when she has demonstrated no independent knowledge of a fraudulently underwritten loan that resulted in a claim, would prejudice Carrington by unnecessarily prolonging this litigation and forcing it to undergo the cost and burden of briefing a fourth motion to dismiss Relator's insufficient allegations.

## CONCLUSION

For all of the foregoing reasons, Carrington respectfully requests that the Court dismiss Relator's Second Amended Complaint in its entirety with prejudice.

Dated: March 2, 2018

By:  */s/Jeanine Kerridge*

Jeanine Kerridge
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone:  (317) 231-7236
Facsimile:  (317) 231-7433
E-mail:  Jeanine.Kerridge@btlaw.com

Henninger S. Bullock, *pro hac vice*
Allison J. Zolot, *pro hac vice*
Niketa K. Patel, *pro hac vice*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 849-5528
Email:  hbullock@mayerbrown.com

*Attorneys for Defendant*
*Carrington Mortgage Services LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 2nd day of March, 2018, a copy of the foregoing was filed electronically using the CM/ECF system and is available to all counsel of record using same.

*/s/ Jeanine Kerridge*
Jeanine Kerridge

35